OPINION
{¶ 1} Jermaine Roberts appeals from his conviction in the Montgomery County Common Pleas Court for possession of cocaine (100 grams but 500 — other than crack) pursuant to his no contest plea.
 {¶ 2} On December 6, 2004, Detective Douglas Hall was contacted by a reliable confidential informant that there was a green car with heavy window tint. It had Ohio dealer tags, was located at the Submarine House at Salem and Ravenwood, and contained a large amount of narcotics. Hall described his informant as someone who had over a three year period provided information which led to forty or fifty arrests. Hall also said that those search warrants were obtained based on the informant's information leading to the discovery of illegal drugs, money, and weapons. Hall contacted Dayton Police Officers Christopher Cromwell and Matthew Beavers who were at the Submarine House on an unrelated call. Cromwell informed Hall that he observed a vehicle parked in front of the restaurant that matched the informant's description.
 {¶ 3} Hall was familiar with the Submarine House as he had participated in several drug buy operations in that immediate area in the past. Hall proceeded to the area of the Submarine House in an unmarked cruiser and set up a surveillance of a green Grand Prix vehicle. Hall said a maroon Lumina pulled into the parking lot in front of the restaurant and parked next to the suspect vehicle. Hall then saw Roberts walk over to the Lumina, get into the Lumina, and then speak with the driver. Hall saw Roberts get out of the car, use his cell phone, and enter the Lumina vehicle. Hall saw Roberts repeat these actions several times while looking up and down Salem and Ravenwood Avenues. Hall observed Roberts finally go over to the green Grand Prix and retrieve a brown paper lunch bag from it. Hall observed Roberts then get into the passenger side of the Lumina with the bag. The vehicle exited the parking lot. During the surveillance, Hall relayed over his radio what he had observed. Other officers followed the Lumina south on Salem Avenue. Officer Cromwell decided to stop the Lumina because its right rear light had a broken lens. After Officer Beavers activated his emergency lights, it took the driver of the Lumina about a block to stop. Cromwell noticed the driver was a female and the passenger was a male who turned out to be the defendant. Cromwell noticed that Roberts kept looking back at the cruiser and he appeared to be placing something on the front floorboard of the car. Cromwell was concerned that Roberts was possibly moving a weapon from his person or getting a weapon. Cromwell had Roberts get out of the vehicle and move to the rear of the vehicle. He then patted him down for possible weapons. Cromwell saw Officer Sean Huey check the area where Roberts was seated for a possible weapon. Officer Huey searched the "lunge" area of the front passenger seat including the glove compartment. He observed a brown paper lunch bag in the glove compartment which he described was large enough to conceal several weapons. Huey opened the bag and discovered a large amount of powder cocaine.
 {¶ 4} Roberts filed a motion to suppress the cocaine, recovered by the police officer, that resulted in the possession of cocaine charge. The trial court overruled the motion. The court found that the police had reasonable suspicion to stop the Lumina based on the information provided police by the informant and the observations of the activity outside the restaurant. The court found the search of the glove compartment was reasonable for the protection of the police officers. The trial court did not discuss whether the officer properly opened the bag in the glove compartment without first "patting it" down.
 FIRST ASSIGNMENT OF ERROR {¶ 5} THE TRIAL COURT ERRED IN FINDING THAT THE POLICE HAD THE NECESSARY REASONABLE SUSPICION TO CONDUCT AN INVESTIGATIVE STOP OF THE MOTOR VEHICLE.
 {¶ 6} In the first assignment, Defendant argues that the police lacked the reasonable suspicion of criminal activity necessary to justify making an investigative stop of the motor vehicle in which the appellant was a passenger. The state argues that although the automobile in which Roberts was riding need only have one functioning red taillight, the traffic stop was reasonable because police also had reasonable suspicion to believe Roberts had just engaged in a drug transaction at the Submarine House parking lot. We agree.
 {¶ 7} Law enforcement officers may briefly stop and detain an individual for investigation if the officers have a reasonable, articulable suspicion that criminal activity may be afoot. That is something more than an unparticularized suspicion or mere hunch, but less than the level of suspicion required for probable cause. Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868,120 L.Ed.2d 889; State v. White (Jan. 18, 2002), Mont. App. No. 18731. To satisfy that standard, police must be able to point to specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the intrusion. Terry; State v. White.
 {¶ 8} The propriety of an investigative stop or detention must be viewed in light of the totality of the surrounding facts and circumstances. State v. Bobo (1988), 37 Ohio St.3d 177. These circumstances must be viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold. State v. Andrews (1991),57 Ohio St.3d 86. While a series of events may appear innocent when viewed separately, taken together, they can warrant further investigation. U.S. v. Sokolow, 490 U.S. 1, 109 S.Ct. 1581,104 L.Ed.2d 1 (1989). For this reason, the court must take into consideration the officer's training and experience and understand how the situation would be viewed by the officer on the street. State v. Andrews (1991), 57 Ohio St.3d 86.
 {¶ 9} In the present case, police officers were provided information from a reliable confidential informant regarding a Grand Prix that contained a large quantity of illegal drugs. The information provided by the informant was specific as to the time and location of the vehicle, as well as to the vehicle's color, window tint, and dealer tag. This information was then independently verified through officers at the location where the vehicle was parked. Detectives then conducted surveillance of the vehicle. Having prior knowledge of the high crime and drug activity of the area, Detective Hall observed Defendant's suspicious activities. Roberts went from the Grand Prix to the Lumina and back several times. He made several phone calls while craning his neck looking up and down the road at the cars that drove past. He eventually retrieved a brown paper lunch bag from the Grand Prix. These observations, when taken in conjunction with the information provided by the confidential informant, and the fact that this activity was taking place in a high drug crime area, were sufficient to give rise to the reasonable suspicion necessary to conduct an investigative stop of the vehicle in which Defendant was a passenger. The first assignment of error is Overruled.
 SECOND ASSIGNMENT OF ERROR {¶ 10} THE TRIAL COURT ERRED IN FINDING LAWFUL A WEAPONS SEARCH OF THE INTERIOR OF THE VEHICLE.
 {¶ 11} In the second assignment, Defendant argues that the search of the interior of the Lumina by the police officers was unlawful. The state argues that the police officers' belief that a drug transaction had taken place coupled with Defendant's movements inside the vehicle, were indicative of a gun either being hidden or retrieved. Thus, a search of the "lunge area" inside the vehicle was lawful. We again agree.
 {¶ 12} Ohio courts, including this one, have long recognized that persons engaged in illegal drug activity are often armed with a weapon. State v. Evans, 67 Ohio St.3d, 413,1993-Ohio-186; State v. Taylor (1992), 82 Ohio App.3d 434;State v. Lindsey (June 23, 2000), Mont. App. No. 18073. "Thus, the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officer to believe that the suspect is dangerous and the suspect may gain immediate control of weapons." Michigan v.Long, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). As we have already concluded, the police officers had a reasonable suspicion that Defendant was involved in illegal drug activity. Furthermore, during the execution of the traffic stop, officers observed the Defendant looking back over his shoulder in the direction of the police cruiser, and making furtive movements with his right hand, leaning forward. These movements by the Defendant coupled with the officers' belief that Defendant was involved in a drug transaction caused the officers concern for their own safety, not knowing if the Defendant was attempting to conceal or retrieve a weapon and that he may subsequently be permitted to return to the vehicle he was riding in. SeeMichigan v. Long, supra, at 1051, 1052. The search of the glove compartment of the vehicle was reasonable. The second assignment of error is Overruled.
 THIRD ASSIGNMENT OF ERROR {¶ 13} THE TRIAL COURT ERRED IN FINDING LAWFUL THE SEARCH OF THE INTERIOR OF A CLOSED BAG REMOVED FROM THE GLOVE COMPARTMENT OF THE MOTOR VEHICLE PURSUANT TO A WEAPONS SEARCH.
 {¶ 14} In the third assignment, Defendant argues the officer's search of the closed brown paper bag exceeded the scope of a lawful Terry search that extends to an open glove compartment. The State argues that the officers had probable cause to believe that contraband or evidence of criminal conduct could be found in the brown paper bag.
 {¶ 15} The trial court did not address the propriety of Officer Huey's opening the large paper bag which he found in the glove compartment without the Officer's first "patting the bag down." Recently, the United States Court of Appeals for the Eighth Circuit addressed the propriety of searching a closed container capable of concealing a weapon in a vehicle. U.S. v.Shranklin, 315 F.3d 959 (8th Cir., 2003). In that case, a police officer opened a pouch recovered from underneath the front passenger seat during a protective search for weapons. The pouch contained a syringe filled with illegal drugs. Circuit Judge Bowman wrote as follows:
 {¶ 16} "Third, Harmon was not constitutionally required to pat down the pouch instead of opening it. Fourth Amendment reasonableness involves balancing the legitimate need to search with the privacy interest that is invaded. Camara v. Mun.Court, 387 U.S. 523, 536-37, 87 S.Ct. 1727, 18 L.Ed.2d 930
(1967). An individual has great interest in the privacy of his person: `Even a limited search of the outer clothing for weapons constitutes a severe, though brief, intrusion upon cherished personal security, and it must surely be an annoying, frightening, and perhaps humiliating experience.' Terry,392 U.S. at 24-25, 88 S.Ct. 1868. This explains why a pat-down is appropriate rather than a `full' search. Id. at 26,88 S.Ct. 1868. But a person's privacy interest in an item such as a pouch, while protected by the Fourth Amendment, cf. U.S. v. Gwinn,191 F.3d 874, 878 (8th Cir. 1999), is not sacrosanct during an investigative traffic stop and must be balanced against the inherent risk of danger to officers at such stops. Long,463 U.S. at 1048, 103 S.Ct. 3469. Given the facts of this case, Fleming's privacy interest in the pouch did not rise to the level that would require a pat-down search of the pouch. Had the black pouch contained a weapon, there is no guarantee that merely feeling the pouch would have led Harmon to discover the weapon. For example, some type of padding could have enveloped the weapon, or the weapon could have been a pocketknife with an unexposed blade. It was therefore reasonable for Harmon to open the pouch in order to inspect for weapons with his sense of sight and not solely with his sense of touch. We also note the resemblance here to Long, where police officers searched a car for weapons and found a pouch. Upon looking inside the pouch, the officers discovered it contained marijuana; the Supreme Court gave no indication that the officers should have patted down the pouch first."
 {¶ 17} We find the reasoning in U.S. v. Shranklin,
persuasive. See also Search and Seizure (4th Ed.), LaFave, § 9.6(e) at 685. Once Officer Huey opened the large bag, he observed the powdered cocaine in "plain view." See Arizona v.Hicks, 480 U.S. 321 (1987).
 {¶ 18} Parenthetically, we believe a reasonable police officer would have had probable cause under these circumstances to believe the paper bag in the glove compartment contained drugs based on the information provided by the informant and the police officers' observations of the defendant's activity. Under the "automobile" exception to the warrant requirement, police may open closed containers in automobiles stopped on the highway if they possess probable cause the container contains evidence related to the crime under investigation. U.S. v. Ross,456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). The question in the final analysis is whether Officer Huey's conduct was reasonable under the Fourth Amendment from an objective perspective. See Devenpeck v. Alford (2004), 543 U.S. 146,125 S.Ct. 588, 160 L.Ed.2d 537. The police officers had information from a reliable confidential informant that the green car contained a large quantity of illegal drugs. Defendant was observed inside the green Grand Prix. The police also observed Defendant make several phone calls all while craning his neck in the direction of the cars driving past. Defendant was also observed taking a brown paper bag from the Grand Prix, placing it in his pocket, and getting into the Lumina. Defendant's actions during the subsequent stop led the officers to believe that he was also attempting to conceal something in the area of the vehicle in front of him. The probable cause required for a search is evidence from which the officer can reasonably conclude that it is more likely than not that a crime has occurred, and that evidence of the crime can be found in the place to be searched. The third assignment of error is also Overruled.
 {¶ 19} The judgment of the trial court is Affirmed.
Wolff, J. and Fain, J., concur.
(Hon. Anthony Valen, retired from the Twelfth Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).