OPINION
{¶ 1} This matter is before the Court on the Notice of Appeal of Marcus Pitts, filed August 16, 2005. On July 8, 2004, a Greene County Grand Jury indicted Pitts on four counts of assault on a police officer, in violation of R.C. 2903.13(A), all felonies of the fourth degree, and one count of obstructing official business with a risk of physical harm, in violation of R.C. 2921.31(A), a felony of the fifth degree. On August 16, 2004, Pitts filed a Motion to Suppress, which the trial court overruled on September 9, 2004. The matter proceeded to a jury trial on June 1, 2005, and Pitts was found guilty on all counts in the indictment. The court sentenced Pitts to consecutive seventeen month terms on each count of assault on a peace officer, and to eleven months on the obstructing official business count, to be served concurrently to the sentences on the other four counts.
 {¶ 2} On June 29, 2004, Officer Shawn Pettit of the Fairborn Police Department was dispatched to a Fairborn address on a report of a stolen vehicle. The car had been entered stolen by officer Steve Holcomb on June 28, 2004. The initial report came from a woman in whose name the vehicle was not titled, thus Holcomb was initially unable to enter the car as stolen into LEADS. However, Holcomb put a broadcast out for the car at first. He later spoke to the titled owner of the car and entered it into LEADS as a stolen vehicle. Holcomb ultimately learned that the use of the car had been given to Pitts for two days in exchange for crack cocaine, but Pitts had failed to return the car for over a week.
 {¶ 3} Upon reaching the Fairborn address, Pettit observed a vehicle in the driveway that matched the description of the stolen car. Pettit also observed Pitts standing in the driveway, talking to another man. In response to an inquiry from Pettit about the car, Pitts indicated that he was in possession of the keys. Pettit asked Pitts to step back to his cruiser, and Pitts complied. Pettit noticed that Pitts was carrying a baggie of marijuana, and Pitts asked Pettit, "Can I keep the bag of weed I just bought?" Pettit handcuffed Pitts and placed him in the back of his cruiser. Pitts volunteered that he had permission to use the car, and he attempted to provide evidence to Pettit showing that he was in lawful possession of the vehicle.
 {¶ 4} Officers Ryan Whitaker and Holcomb, Sergeant Paul Hicks, and Detective Gary Mader arrived at the scene after Pettit. Det. Mader attempted to verify Pitts' assertion regarding possession of the car. Pettit then noticed that Pitts had slipped his handcuffs from behind his back to in front of him. Pitts was removed from the cruiser so that the officers could re-secure his hands behind him with cuffs. At that time, Pitts became combative. After a struggle, Pitts was again handcuffed and placed in the rear of the cruiser. After officers closed the door, Pitts began kicking the window of the cruiser. Whitaker opened the door and asked Pitts to place his feet outside the cruiser so that the officers could restrain his legs. Pitts refused. Whitaker grabbed Pitts' right leg and turned Pitts to face him. Pitts then kicked Whitaker with his left leg in the groin area. Whitaker removed Pitts from the car, and he continued to struggle and kick at the officers.
 {¶ 5} In an attempt to subdue him, one of the officers applied pepper spray to Pitts, and then the Fairborn paramedics were called to begin a decontamination process. When paramedic Joshua Lawrence arrived and attempted to treat Pitts, Pitts spat at Lawrence. Whitaker told Pitts that if he continued to spit he would have additional charges lodged against him, and Pitts indicated "he didn't care, he had been to prison before." Pitts was placed in Hicks' patrol car. Pitts then complained of chest pains and Hicks removed him from the vehicle. Upon removal, Pitts lunged at Lawrence, and continued to spit at the officers, and once again he was placed in Hicks' car.
 {¶ 6} Hicks transported Pitts to the Fairborn Police Department. On the way, Pitts again slipped his handcuffs and placed his hands in front of him. Holcomb and dispatcher Brian Harris met Hicks at the department, and they escorted Pitts into the jail while his belligerence continued. Hicks removed Pitts' handcuffs, and Pitts attempted to strike Holcomb. Hicks, Holcomb and Harris pinned Pitts down and then secured him in a solitary cell. Pitts' eye was injured in the altercation. He was taken by ambulance to Greene Memorial Hospital and later returned to the jail.
 {¶ 7} In his Motion to Suppress, Pitts sought to exclude "the observations of the officer herein for the reason that the officer had no reasonable articulable suspicion or probable cause upon which to stop, detain or arrest the Defendant," and also to suppress "any statements which may have been made by the Defendant as a result of his illegal arrest and interrogation." In overruling the Motion, the trial court determined that the "testimony credibly disclosed that the officers had reasonable, articulable suspicion and probable cause to stop and detain the Defendant and the Defendant's actions thereafter as observed by the officers are the basis of the charges contained in the indictment." The court further determined that "there were no inculpatory statements by the Defendant with reference to the charges contained in the indictment."
 {¶ 8} Pitts asserts four assignments of error. His first assignment of error is as follows:
 {¶ 9} "THE TRIAL COURT ERRED IN OVERRULING THE MOTION TO SUPPRESS."
 {¶ 10} "In reviewing a trial court's decision on a motion to suppress, an appellate court is required to accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. Accepting those facts as true, the appellate court must then independently determine, as a matter of law and without deference to the trial court's conclusion, whether they meet the applicable legal standard."State v. Winterbotham, Greene App. No. 05CA100, 2006-Ohio-3989.
 {¶ 11} At the hearing on his motion, Pitts argued that he was illegally detained. "Law enforcement officers may briefly stop and detain an individual for investigation if the officers have a reasonable, articulable suspicion that criminal activity may be afoot. That is something more than an unparticularized suspicion or mere hunch, but less than the level of suspicion required for probable cause. (Internal citations omitted.) To satisfy that standard, police must be able to point to specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the intrusion. (Internal citations omitted.) The propriety of an investigative stop or detention must be viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold." (Internal citations omitted.) State v.Roberts, Montgomery App. No. 21221, 2006-Ohio-3042. "Probable cause exists when there is a `fair probability that contraband or evidence of a crime will be found in a particular place." Statev. Evans, Montgomery App. No. 20794, 2006-Ohio-1425.
 {¶ 12} Pettit, Holcomb and Mader testified at the hearing on Pitt's Motion to Suppress. The testimony was clear that Pettit was dispatched on the report of a stolen vehicle, and that, upon reaching the address to which he was sent, he observed a vehicle matching the description he was given, and that Pitts, who had marijuana in his hand, indicated that he was in possession of the car. We agree with the trial court that Officer Pettit had a reasonable and articulable suspicion to detain Pitts. During that detention, Pitts became violent, and the trial court correctly noted that "Defendant's actions thereafter as observed by the officers are the basis of the charges in the indictment." At the time of the hearing on Pitts' Motion, there was no evidence that Pitts made any incriminating statements in response to police questioning. We note his admission to possession of the vehicle was both voluntary and unrelated to the charges to assault and obstructing official business. The trial court properly overruled Pitts' Motion to Suppress, and Pitts' first assignment of error is overruled.
 {¶ 13} Pitts' second assignment of error is as follows:
 {¶ 14} "THE VERDICT OF THE JURY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE"
 {¶ 15} "When a conviction is challenged on appeal as being against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact `clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' (Internal citations omitted). A judgment should be reversed as being against the manifest weight of the evidence `only in the exceptional case in which the evidence weighs heavily against the conviction.'" State v. Scott,
Montgomery App. No. 21260, 2006-Ohio-4016.
 {¶ 16} The four counts of assault on a peace officer involve Whitaker, Mader, Pettit and Hicks. The fifth count of obstructing official business resulted from Pitts' "fighting with personnel in the Fairborn Jail." As to Whitaker, Pitts argues that, due to Pitts' upright position in the cruiser, the assault "was not only physically impossible, but that there cannot be established that this was ever the intent of Mr. Pitts." As to Mader, Pitts argues that, "if detective Mader was never kicked, was never at the feet of Mr. Pitts and there was never an intention of Mr. Pitts demonstrated to `knowingly cause or attempt to cause physical harm' to Detective Mader, that the verdict of the jury was against the manifest weight of the evidence." As to Pettit, Pitts argues that Pettit testified that he was not assaulted. Finally, as to Hicks, Pitts argues that "the testimony of officer Hicks demonstrates that there was never physical contact made between he and Mr. Pitts despite the fact that he was the officer closest to the feet of Mr. Pitts."
 {¶ 17} R.C. 2903.13(A) provides that "[n]o person shall knowingly cause or attempt to cause physical harm to another * * *."
 {¶ 18} Whitaker described his efforts to remove Pitts from the car after Pitts began kicking the windows, stating, "* * * I asked him several times to bring his legs around, he refused, at that point I reached in to grab, it would have been his right leg and kind of spun him around trying to bring him around. Unfortunately, I just had a hold of his right leg and at that point once I brought him around he brought his left leg back and kicked me." Mader described his and the other officers' efforts to subdue Pitts after Whitaker removed him from the car, stating, "[a]t this point, he is again, the profanities are continuous throughout the entire course of contact with him, but he's still refusing to obey any of our commands. At this point we have him on the ground and we're trying to secure his legs, the officers are, including myself, are trying to concentrate on the legs, trying to get those wrapped up so he can't kick us anymore, and he's refusing to answer any of our commands. * * *"
 {¶ 19} Pettit testified regarding his and the other officers' attempts to place leg restraints on Pitts, stating, "[a]s he was laying on his back, he was kicking at officers that were around so it was very difficult to get close enough to him to be able to actually put the leg restraints on him." Hicks testified that he sprayed Pitts with pepper spray after "he continued kicking at everyone who is trying to get him secure."
 {¶ 20} Having reviewed the entire record, weighed the evidence and all reasonable inferences, we conclude that the evidence does not weigh heavily against Pitts' convictions. Each of the four officers named in the indictment testified that Pitts kicked at them repeatedly. Their testimony was consistent and credible. Whitaker's testimony is clear regarding his efforts to remove Pitts from the car and Pitts' assault on him, and it belies Pitts' argument of physical impossibility. As to Pitts' mens rea toward Whitaker, "a person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature."State v. McDaniel (May 1, 1998), Montgomery App. No. 16221. Making contact with Whitaker's body was a probable result of Pitts' kicking his left leg at Whitaker while Whitaker held Pitts' right leg. The jury did not lose its way in finding that Pitts caused or attempted to cause physical harm to Whitaker, Mader, Pettit and Hicks, and Pitts was correctly convicted on four counts of assault on a peace officer.
 {¶ 21} As to the conviction for obstructing official business, Hicks, Holcomb and dispatcher Harris testified regarding Pitts' behavior at the jail. Hicks stated that the three men had to use force to pin Pitts down. Holcomb testified that Pitts jumped up from his seat at the jail and "pushed me in the chest" and that he was forced to strike Pitts in the face. Harris' testimony was consistent with Holcomb's. Clearly, this conduct hampered the book-in process required of these officers in the performance of their official duties. The jury did not lose its way in convicting Pitts of obstructing official business. Pitts' second assignment of error is overruled.
 {¶ 22} Pitts' third assignment of error is as follows:
 {¶ 23} "APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE OHIO AND UNITED STATES CONSTITUTION"
 {¶ 24} Pitts complains that "testimony was elicited which indicated that Mr. Pitts had indicated that he had been to prison prior to the events on this date and further that Mr. Pitts was in possession of marijuana when he was approached by officers." According to Pitts, his counsel was ineffective for not filing a liminal motion to exclude this evidence. Pitts further argues that he "was denied the effective assistance of counsel when his trial counsel did not request a jury instruction and did not present any evidence with respect to the defense of self-defense."
 {¶ 25} Claims of ineffective assistance of counsel are assessed according to the two part test articulated inStrickland v. Washington (1984), 466 U.S. 668. "In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's representation fell below an objective standard of reasonableness and that, but for counsel's errors, the result of the proceeding would have been different."State v. Kidd, Clark App. No. 2005-CA-37, 2006-Ohio-4008. "Trial counsel is entitled to a strong presumption that his conduct falls within the wide range of reasonable assistance. * * * Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel." State v. Parrish, Montgomery App. No. 21206,2006-Ohio-4161." A court's jury instructions must be based on the actual issues in the case as presented by the evidence. (internal citations omitted.) Thus, a court should not give an instruction unless it is specifically applicable to the facts in the case. * * * To determine whether an instruction on self-defense is warranted, the trial court must determine `whether the defendant has introduced sufficient evidence, which, if believed, would raise a question in the minds of reasonable men concerning the existence of such issue.' (Internal citations omitted.)
 {¶ 26} "Under Ohio law, self-defense is an affirmative defense for which the defendant bears the burden of proof. In order for a defendant to establish self-defense involving the use of nondeadly force, he must prove by a preponderance of the evidence (1) that the defendant was not at fault in creating the situation giving rise to the altercation and (2) that he had reasonable grounds to believe and an honest belief, even though mistaken, that he was in imminent danger of bodily harm and his only means to protect himself from such danger was by the use of force not likely to cause death or great bodily harm. * * *
 {¶ 27} "When the situation involves the use of force against law enforcement officers, a private citizen may not — in the absence of excessive or unnecessary force by an arresting officer — use force to resist arrest by one he knows, or has good reason to believe, is an authorized police officer engaged in the performance of his duties, whether or not the arrest is illegal under the circumstances." State v. Fritz, 163 Ohio App.3d 276,284, 2005-Ohio-4736 (finding ineffective assistance where counsel did not request a jury instruction on self-defense where defendant was attacked by non-uniformed officers who tackled him and testified that they punched him more than 30 times in the face and kidneys and caused him to be unable to breathe. Further, defendant testified that he did not know his assailants were police officers).
 {¶ 28} Our review of the record indicates that Pitts was not denied effective assistance of counsel. Pitts' counsel filed a motion to suppress and cross-examined the State's witnesses. The evidence of Pitts' previous incarceration and marijuana possession arose from Pitts' voluntary admissions to the officers at the scene. Counsel's failure to file a motion in limine regarding Pitts' prior incarceration and possession of marijauna does fall below an objective standard of reasonableness. Had the evidence been excluded, however, the outcome of the trial would be the same, given the clear and consistent testimony of the officers.
 {¶ 29} Further, the record belies Pitts' assertion that he was entitled to a jury instruction on self-defense. Pitts was not attacked by unknown assailants, but rather he was approached and then detained by Pettit, who arrived in a marked cruiser. Only after Pitts became violent did the officers resort to physical force against Pitts. The force with which the officers attempted to subdue Pitts was neither unnecessary or excessive, and Pitts was not entitled to use force against them. Pitts did not testify in his own defense and the record does not contain any evidence that Pitts went forward with this affirmative defense. Counsel for Pitts accordingly did not err in failing to request a jury instruction on self-defense. Pitts' third assignment of error is overruled.
 {¶ 30} Pitts' fourth assignment of error is as follows:
 {¶ 31} "THE SENTENCE OF THE APPELLANT WAS ERRONEOUS."
 {¶ 32} Pitts received non-minimum consecutive sentences. The State concedes that this matter must be reversed and remanded pursuant to State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856.Foster determined that certain sections of Ohio's felony sentencing guidelines, which required judicial fact-finding prior to the imposition of sentence, represented an unconstitutional denial of a defendant's Sixth Amendment right to a jury trial.Foster established a bright-line rule that any pre-Foster
sentence to which the statutorily required findings of fact applied (i.e., more-than-minimum, maximum, and consecutive sentences), pending on direct review at the time that Foster
was decided, must be reversed, and the cause remanded for re-sentencing in accordance with Foster, if the sentence is a subject of the appeal. Accordingly, Pitts' sentence is reversed and the matter is remanded for resentencing consistent withFoster.
Grady, P.J. and Fain, J., concur.