[Cite as *State v. Sugden*, 2024-Ohio-4442.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS | |
| | )ss: | NINTH JUDICIAL DISTRICT | |
| COUNTY OF MEDINA | ) | | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.    2023CA0078-M |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| SUSAN A. SUGDEN | MEDINA MUNICIPAL COURT COUNTY OF MEDINA, OHIO |
| Appellant | CASE No.    24TRC01851 |

DECISION AND JOURNAL ENTRY

Dated: September 9, 2024

STEVENSON, Presiding Judge.

{¶1} Defendant-Appellant Susan Sugden appeals an order of the Medina Municipal Court that denied her motion to suppress. This Court affirms.

I.

{¶2} Montville Township Police Officer Justin Harvey initiated a traffic stop of Ms. Sugden after he observed her travel out of her lane two times and make an improper left-hand turn. Officer Harvey activated the lights on his cruiser and followed Ms. Sugden into a back parking lot.

{¶3} When Officer Harvey approached the truck to speak with Ms. Sugden, he detected "a slight odor of alcoholic beverage [e]mitting from the vehicle." He also observed that Ms. Sugden "was slurring her words" and that "her eyes were bloodshot and glassy."

{¶4} Officer Harvey's conversation with Ms. Sugden "was generally taken over by her passenger Leslie . . . ." After alcohol consumption was initially denied, Leslie, Ms. Sugden's

sister, informed Officer Harvey that they had one glass of wine at dinner which was between 8:00 – 9:00 p.m. Sister also told Officer Harvey that open containers of alcoholic beverages in the truck's backseat were recycles.

{¶5} Officer Harvey had Ms. Sugden exit her truck after she failed to accurately complete two pre-exit tests. Although Ms. Sugden represented that she had a bad knee and was scheduled for surgery that week, she "hopped down" from the truck without using the truck's step rail.

{¶6} Officer Harvey had Ms. Sugden walk to the front of his cruiser for field sobriety testing. Officer Harvey noticed that Ms. Sugden "stagger[ed] slightly to the left" as she walked to the cruiser.

{¶7} Officer Harvey performed the horizontal gaze nystagmus ("HGN") test on Ms. Sugden, during which she "kept moving her head." Officer Harvey had to have Ms. Sugden "put her hands . . . on either side of her chin, to help keep herself from moving her head." Officer Harvey noted four out of six clues during the administration of the HGN, which means "[t]hat there's a great likelihood that [the person is] over the .08 BAC limit." Officer Harvey noticed the odor of alcoholic beverage coming from Ms. Sugden during the HGN.

{¶8} Officer Harvey then checked Ms. Sugden's eyes for lack of convergence. Neither of Ms. Sugden's eyes properly converged on the stimulus. According to Officer Harvey, "[l]ack of convergence is present with some drugs."

{¶9} Officer Harvey next administered the Modified Romberg Test. Ms. Sugden estimated the passage of 30 seconds in 45 seconds during this test. Lastly, Officer Harvey administered the finger-to-nose test on Ms. Sugden. Ms. Sugden failed to touch her nose on the first attempt at this test.

{¶10} Ms. Sugden was arrested and charged with operating a vehicle under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a) ("OVI"), operating a vehicle with a prohibited blood alcohol concentration under R.C. 4511.19(A)(1)(d) ("BAC OVI"), and travelling outside of marked lanes in violation of R.C. 4511.33.

{¶11} Ms. Sugden moved to suppress all evidence gained as a result of the traffic stop and her arrest, arguing Officer Harvey did not have a reasonable articulable suspicion to stop her truck; Officer Harvey did not have a reasonable suspicion that justified detaining her to conduct field sobriety tests; and Officer Harvey did not have probable cause to arrest her. Ms. Sugden also moved to suppress the results of the field sobriety tests, arguing that they were not conducted in substantial compliance with National Highway Traffic Safety Administration ("NHTSA") standards. The trial court denied Ms. Sugden's motion to suppress in its entirety.

{¶12} Ms. Sugden pleaded no contest to the three charges. The trial court found Ms. Sugden guilty and, for sentencing purposes, it merged the BAC OVI charge into the OVI charge. On the OVI charge, the trial court imposed a $500 fine; a nine-month license suspension, with credit for three months served under the administrative license suspension; three days in jail with three days of credit for attending the driver intervention program; and six points assessed against her license. The trial court imposed a $50 fine on the travelling outside of marked lanes charge. Ms. Sugden appeals the trial court's ruling on the motion to suppress, raising three assignments of error.

II.

### ASSIGNMENT OF ERROR NO. I

**THE TRIAL COURT ERRED IN FINDING THAT OFFICER HARVEY HAD REASONABLE, ARTICULABLE SUSPICION TO STOP [MS. SUGDEN'S] VEHICLE[.]**

**{¶13}** Ms. Sugden argues that the trial court erred when it denied her motion to suppress. We disagree.

## Motion to Suppress

**{¶14}** The Ohio Supreme Court has stated:

Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Citations omitted.) *State v. Burnside*, 2003-Ohio-5372, ¶ 8. Pursuant to *Burnside*, "[o]nce this Court has determined that the trial court's factual findings are supported by the evidence, we consider the trial court's legal conclusions de novo." *State v. Iloba*, 2021-Ohio-3700, ¶ 7 (9th Dist.), citing *Burnside* at ¶ 8.

## Fourth Amendment

**{¶15}** The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." Article I, Section 14, of the Ohio Constitution contains nearly identical language. The traffic stop of a vehicle constitutes a seizure for Fourth Amendment purposes. *Whren v. United States*, 517 U.S. 806, 809-810 (1996).

## Reasonable Suspicion

**{¶16}** "[A] law enforcement officer may stop a vehicle when the officer has a reasonable suspicion, based on specific and articulable facts, that an occupant is or has been engaged in criminal activity." *State v. Epling*, 105 Ohio App.3d 663, 664 (9th Dist. 1995). *See also Dayton v.*

*Erickson*, 76 Ohio St.3d 3, 11-12 (1996) ("where an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid . . . .") A stop is constitutionally valid provided the law enforcement officer has "a reasonable, articulable suspicion that criminal activity *may* be afoot." (Emphasis added.) *State v. Roberts*, 2006-Ohio-3042, ¶ 7 (2d Dist.); *Terry v. Ohio*, 392 U.S. 1, 30 (1968).

{¶17} "Reasonable suspicion is something less than probable cause." *Epling* at 664, citing *State v. VanScoder*, 92 Ohio App.3d 853, 855 (9th Dist. 1994). Reasonable suspicion "is something more than an unparticularized suspicion or mere hunch, but less than the level of suspicion required for probable cause." *Roberts* at ¶ 7, citing *Terry* at 1. "Thus, 'the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard.'" *State v. Cunningham*, 2015-Ohio-4306, ¶ 17 (9th Dist.), quoting *United States v. Arvizu*, 534 U.S. 266, 274 (2002). To satisfy that standard, the law enforcement officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry* at 21.

{¶18} When "analyzing whether reasonable suspicion existed, this Court looks to the facts available to the officer at the moment of the seizure or the search and considers whether those facts would warrant a man of reasonable caution in the belief that the action taken was appropriate." (Internal citations and quotations omitted.) *State v. Blair*, 2008-Ohio-6257, ¶ 5 (9th Dist.). "Reasonable suspicion is based on the totality of the circumstances." *State v. Bralek*, 2018-Ohio-2496, ¶ 11 (9th Dist.), citing *United States v. Cortez*, 449 U.S. 411, 417-418 (1981). The Court must consider "the totality of the circumstances as they were known to [the officer] prior to the time [the officer] stopped [the defendant], together with reasonable inferences that could be drawn

from the circumstances . . . ." *State v. Tidwell*, 2021-Ohio-2072, ¶ 40. Reasonable suspicion exists even if a defendant is not cited for the traffic violation. *State v. Thayer*, 2012-Ohio-3301, ¶ 21 (9th Dist.).

### Improper Left-Turn

{¶19}  Ms. Sugden has not challenged the trial court's factual finding that, when turning left from S.R. 18 onto River Styx Road, she turned "into the rightmost of the two southbound through lanes . . . instead of into the leftmost lane immediately adjacent to the center double yellow lane lines." Accepting this factual finding as true, this Court must independently consider whether Officer Harvey had "a reasonable suspicion, based on specific and articulable facts, that an occupant [Ms. Sugden] is or has been engaged in criminal activity." *Epling,* 105 Ohio App.3d at 664. *See also*, *Erickson,* 76 Ohio St.3d at 11-12.

{¶20}  Ms. Sugden argues that she complied with R.C. 4511.36(A)(2) when she made a left-hand turn from S.R. 18 onto River Styx Road. Ms. Sugden "asks this [C]ourt to rule that [its decision in *State v.*] *Graham*, [2014-Ohio-3283 (9th Dist.)] was wrongly decided and find that Officer Harvey did not have reasonable suspicion or probable cause to believe that [she] violated O.R.C. §4511.36(A)(2)." We decline to rule that *Graham* was wrongly decided.

{¶21}  R.C. 4511.36(A) provides that:

[t]he driver of a vehicle intending to turn at an intersection shall be governed by the following rules:

. . .

(2)  At any intersection where traffic is permitted to move in both directions on each roadway entering the intersection, an approach for a left turn shall be made in that portion of the right half of the roadway nearest the center line thereof and by passing to the right of such center line where it enters the intersection and after entering the intersection the left turn shall be made so as to leave the intersection to the right of the center line of the roadway being entered. Whenever practicable the

left turn shall be made in that portion of the intersection to the left of the center of the intersection.

This Court interpreted R.C. 4511.36(A)(2) in *Graham*.

{¶22} The appellant in *Graham* made a left-hand turn from a two-way street with two lanes on either side of its center line. *Graham* at ¶ 18. Like Ms. Sugden, the appellant completed the turn by pulling into the right, outside lane of another two-way street that also had two lanes on either side of its center line. *Id.* The trial court held that this turn was proper and "did not give rise to reasonable suspicion for a stop." *Id.* This Court disagreed, holding "both the trial court's interpretation of [R.C. 4511.36(A)(2)] and the legal conclusion it drew as a result of its erroneous interpretation were incorrect." *Id.*

{¶23} Recognizing that R.C. 4511.26(A) is concerned with the movement of traffic behind a vehicle as well as the movement of head-on traffic, this Court noted in *Graham* that:

[a] driver's left-hand turn into the outside lane of an intersecting street necessarily requires a longer and wider arc than does a left-hand turn into the inside lane of that same street. If a driver in the oncoming direction employs a similar approach in executing a left-hand turn, the paths of the two cars will cross and the two may collide.

*Id.* at ¶ 19. Accordingly, *Graham* concluded that R.C. 4511.36(A)(2) "requires drivers, whenever practicable, to pull into the left, inside lane when turning left from a two-way street onto another two-way street." *Id.* We hold that *Graham* was properly decided.

{¶24} Ms. Sugden does not dispute that, when she made a left-hand turn off S.R. 18 onto River Styx Road, she turned into the rightmost of the two southbound through lanes. This was an improper left-hand turn under R.C. 4511.36(A)(2). *Graham* at ¶ 19.

{¶25} Accordingly, based on the totality of the circumstances surrounding the stop at issue in this case, we conclude that the trial court did not err in finding that Officer Harvey had a reasonable and articulable suspicion that Ms. Sugden made an improper left-hand turn. The

observed improper left-hand turn was sufficient to initiate a traffic stop of Ms. Sugden's vehicle. Ms. Sugden's first assignment of error is, accordingly, overruled.

**ASSIGNMENT OF ERROR NO. II**

**THE TRIAL COURT ERRED IN FINDING THAT OFFICER HARVEY HAD REASONABLE, ARTICULABLE SUSPICION TO DETAIN [MS. SUGDEN] TO PERFORM FIELD SOBRIETY TESTS.**

**{¶26}** Ms. Sugden argues in her second assignment of error that the trial court erred in finding that Officer Harvey had reasonable, articulable suspicion to detain her to perform field sobriety tests. We disagree.

**{¶27}** As set forth above, this Court's review of a trial court's ruling on a motion to suppress "presents a mixed question of law and fact." *Burnside*, 2003-Ohio-5372, at ¶ 8. We "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.* If the facts are accepted as true, we "must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*; *Iloba*, 2021-Ohio-3700, at ¶ 7.

**{¶28}** "'[A] police officer does not need probable cause to conduct a field sobriety test; rather, he must simply have a reasonable suspicion of criminal activity.'" *State v. High*, 2017-Ohio-8264, ¶ 8 (9th Dist.), quoting *State v. Slates*, 2011-Ohio-295, ¶ 24 (9th Dist.). "'[R]easonable suspicion exists if an officer can point to specific and articulable facts indicating that [an individual] may be committing a criminal act.' (Internal quotations and citations omitted.) *High* at ¶ 8. The totality of the circumstances is considered when determining whether reasonable suspicion exists." *State v. Panaro*, 2018-Ohio-1005, ¶ 18 (9th Dist.).

**{¶29}** Ms. Sugden does not contest that the stop occurred after 1:30 a.m.; her eyes were red; Officer Harvey had detected a "slight" odor of alcohol; her sister indicated she had a drink;

there were empty alcohol containers in the vehicle; and she failed to accurately complete two pre-exit tests. Ms. Sugden argues that the trial court erred in finding that she committed marked lane violations; her eyes were bloodshot; Officer Harvey detected alcohol on her breath while she was still in her vehicle; she had slurred speech; the location of the stop was near establishments selling alcohol; and she admitted to consuming alcohol.

{¶30} Having reviewed the record, this Court concludes that the trial court's factual findings are based on competent, credible evidence. *See Burnside*, 2003-Ohio-5372, at ¶ 8. Officer Harvey initiated the traffic stop of Ms. Sugden's vehicle after observing an improper left-turn and what he believed to be two marked lane violations. The traffic stop occurred a little after 1:30 a.m.

{¶31} Even if Officer Harvey did not testify that he detected alcohol on Ms. Sugden's breath while she was in her vehicle, he testified he detected "a slight odor of alcoholic beverage [e]mitting from the vehicle" while he was standing at her window. He also testified that Ms. Sugden "was slurring her words" and that her eyes were "bloodshot and glassy." Ms. Sugden acknowledges that her eyes were red.

{¶32} Although Ms. Sugden and Sister initially advised Officer Harvey that Ms. Sugden had not consumed any alcohol, Sister subsequently informed him that they had one glass of wine at dinner. Officer Harvey observed open containers of alcoholic beverages in the truck's backseat. Ms. Sugden failed to accurately complete two pre-exit tests.

{¶33} The record contains dash and body cam videos that support Officer Harvey's testimony. Officer Harvey was the only witness called to testify at the suppression hearing.

{¶34} Based on a review of the totality of the circumstances, this Court concludes that the trial court did not err in finding Officer Harvey possessed reasonable suspicion to detain Ms.

Sugden to investigate her possible impairment. Ms. Sugden's second assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. III

**THE TRIAL COURT ERRONEOUSLY FOUND THAT OFFICER HARVEY HAD PROBABLE CAUSE TO ARREST [MS. SUGDEN] FOR OPERATING A VEHICLE UNDER THE INFLUENCE OF ALCOHOL.**

**{¶35}** Ms. Sugden argues in her third assignment of error that the trial court incorrectly concluded that Officer Harvey had probable cause to arrest her based on observations he made during non-standardized field sobriety testing. We disagree.

**{¶36}** "'[T]his Court reviews a probable cause determination de novo.'" *State v. Russo*, 2009-Ohio-6914, ¶ 6 (9th Dist.), quoting *State v. Sunday*, 2006-Ohio-2984, ¶ 28 (9th Dist.). As this Court has explained:

> [t]he legal standard for probable cause to arrest for OVI is whether 'at the moment of the arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence.'

*State v. Krzemieniewski*, 2016-Ohio-4991, ¶ 11 (9th Dist.), quoting *State v. Homan*, 89 Ohio St.3d 421, 427 (2000), superseded by statute on other grounds. The Ohio Supreme Court has explained that "[t]he totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered or where . . . the test results must be excluded for lack of strict compliance." *Homan* at 427.

**{¶37}** Ms. Sugden argues that the non-standardized field sobriety testing, including the Modified Romberg test and the finger to nose test, should not be included in the determination of whether Officer Harvey had probable cause to arrest her for driving under the influence of alcohol. Ms. Sugden asserts that this Court incorrectly interpreted the Ohio Supreme Court's decision in

*State v. Schmitt*, 2004-Ohio-37 and, as such, came to the wrong conclusion in *State v. Washington*, 2012-Ohio-1391 (9th Dist.). We disagree.

**{¶38}** The Court in *Schmitt* addressed the issue of whether an officer who failed to administer field sobriety tests in substantial compliance with applicable guidelines could testify about the observations he made while the defendant was performing the nonscientific tests. *Schmitt* at ¶ 10. The Court answered in the affirmative, concluding "a law enforcement officer may testify . . . regarding observations made during a defendant's performance of nonscientific standardized field sobriety tests." *Id.* at ¶ 15.

**{¶39}** The defendant in *Washington* argued that "*Schmitt* only applies to an officer's observations while administering 'standardized' tests." *Id.* at ¶ 16. This Court disagreed, noting that *Schmitt* "also explained that it is a person's difficulty performing simple exercises that may reveal whether he is intoxicated." *Id.* Accordingly, we concluded in *Washington* that, "because it is the totality of an officer's perceptions that assists . . . in determining whether someone was driving while intoxicated, there is no reason that *Schmitt* should be limited to an officer's observations during standardized non-scientific field sobriety tests as opposed to other non-scientific field sobriety tests." *Id.* Accordingly, Officer Harvey's observations during the Modified Romberg test and finger to nose test may be considered when determining whether probable cause existed to arrest Ms. Sugden for operating a vehicle while under the influence of alcohol.

**{¶40}** As previously discussed, Officer Harvey testified to three observed traffic violations. He testified that he detected a slight odor of alcohol coming from Ms. Sugden's vehicle; Ms. Sugden's eyes were bloodshot and glassy; Ms. Sugden's speech was slurred; he observed open alcoholic beverages in the vehicle's backseat; and after an initial denial, he was told that Ms. Sugden and her sister had a glass of wine at dinner. Officer Harvey testified as to Ms. Sugden's

performance on pre-exit tests; that despite a bad knee, Ms. Sugden hopped down from her truck; and that Ms. Sugden swayed slightly as she walked toward the cruiser.

{¶41} Officer Harvey testified to his observations while performing the HGN test and while checking Ms. Sugden for lack of convergence. Officer Harvey also testified to his observations during the Modified Romberg test and the finger to nose test.

{¶42} Upon review of the totality of the circumstances, we conclude that the trial court did not err in finding Officer Harvey had probable cause to arrest Ms. Sugden for operating under the influence of alcohol. Ms. Sugden's third assignment of error is overruled.

III.

{¶43} Ms. Sugden's assignments of error are overruled. The judgment of the Medina Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Medina Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT

SUTTON, J.
FLAGG LANZINGER, J.
CONCUR.

APPEARANCES:

DAVID C. SHELDON, Attorney at Law, for Appellant.

GREGORY HUBER, J. MATTHEW LANIER, MEGAN A. PHILBIN, and ROBERT B. CAMPBELL, Prosecuting Attorneys, for Appellee.