[Cite as *State v. Napier*, 2012-Ohio-394.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| --- | --- | --- |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

| STATE OF OHIO | C.A. No. 11CA0006 |
| --- | --- |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| BOBBY NAPIER | WAYNE COUNTY MUNICIPAL COURT COUNTY OF WAYNE, OHIO |
| Appellant | CASE No. TRC-10-11-09530 |

DECISION AND JOURNAL ENTRY

Dated: February 6, 2012

CARR, Judge.

{¶1}   Appellant, Bobby Napier, appeals the judgment of the Wayne County Municipal Court which denied his motion to suppress.  This Court affirms.

I.

{¶2}   On November 6, 2010, Napier was cited by Creston police for a stop sign violation and two counts of driving while under the influence of alcohol.  He pleaded not guilty to the charges at arraignment.

{¶3}   Napier filed a motion to suppress, arguing that the police did not have a reasonable and articulable suspicion to stop his vehicle and that they did not have probable cause to arrest him.  The trial court held a hearing and subsequently denied the motion.

{¶4}   On February 11, 2011, the parties appeared for a change of plea hearing.  The stop sign violation was dismissed, and Napier pleaded no contest to the two counts of driving while

under the influence of alcohol. The trial court sentenced him accordingly. Napier filed a timely appeal in which he raises one assignment of error for review.

II.

## ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT WHEN IT FAILED TO SUPPRESS EVIDENCE OBTAINED AS A RESULT OF AN ILLEGAL SEIZURE IN VIOLATION OF THE DEFENDANT-APPELLANT'S [RIGHTS UNDER THE] FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTION FOURTEEN OF THE OHIO CONSTITUTION.

{¶5} Napier argues that the trial court erred by denying his motion to suppress. This Court disagrees.

{¶6} A motion to suppress presents a mixed question of law and fact:

When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. (Internal citations omitted.)

*State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8.

Automobile Stop

{¶7} Napier first argues that the trial court erred by denying his motion to suppress because the police had no reasonable and articulable suspicion to stop his vehicle. This Court disagrees.

{¶8} The United States Supreme Court has held:

The Fourth Amendment [to the United States Constitution] guarantees the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a seizure of persons within the meaning of this

provision. An automobile stop is thus subject to the constitutional imperative that it not be unreasonable under the circumstances. (Internal quotations and citations omitted.)

*Whren v. United States*, 517 U.S. 806, 809-10 (1996).

{¶9} Moreover,

[t]he essential purpose of the proscriptions in the Fourth Amendment is to impose a standard of reasonableness upon the exercise of discretion by government officials, including law enforcement agents, in order to safeguard the privacy and security of individuals against arbitrary invasions[.] Thus, the permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against the promotion of legitimate governmental interests. (Internal quotations and citations omitted.)

*Delaware v. Prouse*, 440 U.S. 648, 653-54 (1979).

{¶10} The State argues that the police were justified in making an investigative stop in this case. The Ohio Supreme Court has held:

In order to warrant a brief investigatory stop pursuant to *Terry* [*v. Ohio*, 392 U.S. 1 (1968)], the police officer involved must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. Such an investigatory stop must be viewed in light of the totality of the surrounding circumstances presented to the police officer. The standard for reviewing such police conduct is an objective one: would the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate? That is, an investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity. (Internal quotations and citations omitted.)

*State v. Williams*, 51 Ohio St.3d 58, 60-61 (1990).

A violation of a traffic law constitutes the requisite criminal activity. *State v. Hoder*, 9th Dist. No. 03CA0042, 2004-Ohio-3083, at ¶ 8.

{¶11} The *Williams* court further explained:

*Terry* stands for the proposition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest. The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply

shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. (Internal quotations and citations omitted.)

*Williams*, 51 Ohio St.3d at 60.

{¶12} In this case, Sergeant Edward Hamilton of the Creston Police Department testified that at approximately 8:00 p.m. on November 6, 2010, while on duty in his police cruiser, he observed a blue pickup truck "roll[] through a stop sign" and stop in the middle of the intersection. He testified that the truck backed up instead of continuing through the intersection, which allowed the officer to drive through the intersection. Sgt. Hamilton testified that he watched the truck through his rear view mirror and saw it turn left, run off the roadway into some gravel, and nearly hit some mailboxes along the side of the road. When the truck passed his cruiser, the officer followed it for a short distance and initiated a traffic stop at a location which would not disrupt traffic or cause a concern for his safety. After approaching the truck, the officer obtained the driver's license and registration. Sgt. Hamilton identified Napier as the driver of the truck.

{¶13} Napier testified that he stopped at the stop sign, activated his turn signal, and turned left without any problems. He testified that he never saw any other vehicles at the intersection and was not aware of the presence of the police cruiser until he saw the oscillating lights in his rear view mirror.

{¶14} The trial court found the officer's testimony more credible than Napier's testimony. This Court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Burnside* at ¶ 8. Here, there was competent, credible evidence to establish that Napier failed to obey a traffic signal when he failed to stop at a stop sign before

entering the intersection. Because Sgt. Hamilton observed Napier violate a traffic law, he had a reasonable and articulable suspicion of criminal activity and the officer was justified in conducting a brief investigatory stop of the vehicle.

Probable Cause for Arrest

{¶15} Napier argues that the police did not have probable cause to arrest him for driving while under the influence of alcohol. This Court disagrees.

{¶16} Before an officer may effectuate a warrantless arrest, he must have probable cause that the suspect is engaging in criminal activity. *State v. McGinty*, 9th Dist. No. 08CA0039-M, 2009-Ohio-994, at ¶ 11. An officer has probable cause to arrest a person for driving under the influence of alcohol "if, at the moment of the arrest, the totality of the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent person in believing that the suspect had violated R.C. 4511.19." *State v. Kurjian*, 9th Dist. No. 06CA0010-M, 2006-Ohio-6669, at ¶ 17, quoting *In re V.S.*, 9th Dist. No. 22632, 2005-Ohio-6324, at ¶ 13. The results of properly administered field sobriety tests may warrant probable cause to arrest. Significantly, a police officer does not need probable cause to conduct a field sobriety test; rather, he must simply have a reasonable suspicion of criminal activity. *State v. Sunday*, 9th Dist. No. 22917, 2006-Ohio-2984, at ¶ 30, citing *Akron v. Tomko*, 9th Dist. No. 19253, 1999 WL 1037762 (Nov. 3, 1999). "[R]easonable suspicion exists if an officer can point to specific and articulable facts indicating that a driver may be committing a criminal act." *State v. Osburn*, 9th Dist. No. 07CA0054, 2008-Ohio-3051, at ¶ 9, quoting *Wadsworth v. Engler*, 9th Dist. No. 2844-M, 1999 WL 1215151 (Dec. 15, 1999).

{¶17} This Court has stated that the totality of the facts and circumstances can support probable cause for arrest even in the absence of the administration of field sobriety tests.

*McGinty* at ¶ 20; *see, also*, *Kurjian* at ¶ 18, citing *State v. Homan*, 89 Ohio St.3d 421, 427 (2000). In fact, we have held that "the totality of the facts and circumstances can support a finding of probable cause to arrest even when the results of the field sobriety tests must be excluded for lack of compliance to standardized procedures." *Sunday* at ¶ 32, citing *Akron v. Buchwald*, 9th Dist. No. 21433, 2003-Ohio-5044, at ¶ 14.

**{¶18}** Sgt. Hamilton testified that, as soon as he approached Napier's truck, he noticed a strong smell of an alcoholic beverage coming from Napier. The officer testified that Napier's eyes were glassy and his speech was slightly slurred. Sgt. Hamilton testified that Napier informed him that he had had two or three beers that day, while Napier himself testified that he told the officer he had had three or four beers. The officer conceded that he did not notice that Napier had any problems when he provided the documentation requested during the stop or when he exited the truck.

**{¶19}** At the scene, Sgt. Hamilton administered three standard field sobriety tests to Napier. The trial court concluded that the officer's administration of the horizontal gaze nystagmus test was not in substantial compliance with applicable standards, and it did not rely on the results of that test in making its determination as to probable cause. The State did not challenge this conclusion by way of a cross-assignment of error, and this Court does not here review the administration of this particular test or otherwise consider it in our analysis.

**{¶20}** Sgt. Hamilton testified that he also administered the one-leg stand test and the walk and turn test to Napier and that he noted several clues indicating intoxication. The officer testified that, before administering these tests, he asked Napier whether he had any health conditions which would prevent him from performing them. Napier told him that he had no such problems. The officer testified that Napier failed to complete either test and only then informed

the officer that he had arthritis in his knees which prevented him from remaining steady on one leg or walking a straight line. Napier testified at the hearing that he has had arthritis in his knees for ten years.

{¶21} Upon cross-examination, Sgt. Hamilton admitted that there were some typographical errors in his incident report and the impaired driver report. He admitted that he did not complete the impaired driver report during the administration of the field sobriety tests as required, but rather three or four hours later. He admitted that his incident report noted that Napier put his leg down during the one-leg stand twice, while his impaired driver report noted that that happened only once. Finally, the officer admitted that his incident report failed to note that Napier had glassy eyes and slurred speech at the scene, notwithstanding the officer's training and understanding regarding the importance of complete reporting.

{¶22} Napier focuses his argument on an assertion that the officer's testimony was not credible because of the inconsistencies and deficiencies in his reports and the improper administration of one of the field sobriety tests. The trial court, however, found the officer to be credible. The trial court remains in the best position to evaluate the officer's credibility, and we must accept the trial court's findings if they are supported by competent, credible evidence. *Burnside* at ¶ 8. While it is certainly the better practice to memorialize precisely every detail of an incident in a report, in this case, the trial court did not find that the omission of certain details or the presence of typographical errors destroyed the officer's credibility. Sgt. Hamilton's report noted the strong odor of alcohol coming from Napier at the scene. Both his incident report and impaired driver report noted Napier's failure to successfully perform the one-leg stand, regardless of whether he dropped his leg once or twice. Under the circumstances, there was competent, credible evidence to indicate that Napier was intoxicated.

**{¶23}** There was competent, credible evidence to demonstrate that Napier was unable to maintain his balance or walk a straight line at the scene. He offered the excuse that arthritis prevented him from performing only after he failed the tests and after he had assured the officer that he had no medical conditions which would interfere with his ability to perform. Even were we to disregard the results of the field sobriety tests, the totality of the facts and circumstances available to Sgt. Hamilton "were sufficient to warrant a prudent person in believing that the suspect had violated R.C. 4511.19." *Sunday* at ¶ 33; *see, also*, *In re V.S.* at ¶ 13. Those facts and circumstances included Napier's failure to stop at the stop sign, his slow reaction time evidenced by his stopping his vehicle in the middle of the intersection, his failure to control his vehicle while turning resulting in his truck's leaving the roadway and almost hitting some mailboxes, the immediate strong smell of alcohol upon the officer's approach, Napier's glassy eyes and slurred speech, and Napier's admission to having had three or four beers. Accordingly, the totality of the facts and circumstances supports the trial court's finding of probable cause to arrest Napier for driving while under the influence of alcohol.

**{¶24}** Napier's assignment of error is overruled.

### III.

**{¶25}** Napier's sole assignment of error is overruled. The judgment of the Wayne County Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

DICKINSON, J.
CONCURS

BELFANCE, P. J.
CONCURS IN JUDGMENT ONLY

APPEARANCES:

NORMAN R. "BING" MILLER, JR., Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and LATECIA E. WILES, Assistant Prosecuting Attorney, for Appellee.