[Cite as *State v. Washington*, 2012-Ohio-1391.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No.    11CA010042 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| QUINCY T. WASHINGTON, JR. | | OBERLIN MUNICIPAL COURT COUNTY OF LORAIN, OHIO |
| Appellant | | CASE No.    09TRC02695 |

DECISION AND JOURNAL ENTRY

Dated: March 30, 2012

DICKINSON, Judge.

INTRODUCTION

{¶1} Officer Mike Murphy of the Amherst Police Department stopped Quincy Washington after seeing him drive his sport-utility vehicle out of its lane a few times. When he approached the vehicle, Officer Murphy noticed that Mr. Washington's speech was slurred and that his vehicle smelled of intoxicating beverages. After Mr. Washington said some things to Officer Murphy that didn't make sense, the officer asked him to perform several field sobriety tests. When Mr. Washington didn't perform the tests satisfactorily, Officer Murphy arrested him for operating a vehicle under the influence of alcohol. Mr. Washington moved to suppress the evidence against him, arguing that Officer Murphy didn't have probable cause to arrest him. The Oberlin Municipal Court denied his motion. Mr. Washington then pleaded no contest, and a judge found him guilty. Mr. Washington has appealed, arguing that Officer Murphy did not have reasonable suspicion to make him perform field sobriety tests, that Officer Murphy did not have

probable cause to arrest him, and that the municipal court incorrectly concluded that Officer Murphy would be allowed to testify at trial about what he observed during the field sobriety tests. We affirm because Mr. Washington did not challenge whether Officer Murphy had reasonable suspicion to make him perform sobriety tests, the officer had probable cause to arrest him, and the municipal court correctly concluded that the officer could testify about his observations during the tests.

FACTS

{¶2} According to Officer Murphy, he was waiting at an intersection in the right-turn lane around 1:00 a.m. when a green arrow appeared on a traffic signal indicating that the vehicles in his lane could go. The sport-utility vehicle that was first in line, however, did not move, and Officer Murphy watched the arrow go from green to yellow to red. Finally, when the traffic signals indicated that traffic in all of the lanes could go, the sport-utility vehicle made its turn. Officer Murphy turned as well and followed the sport-utility vehicle with one car in between them. As they continued to the next intersection with a traffic light, Officer Murphy saw the sport-utility vehicle cross the center yellow traffic lines three times. When they were finished waiting at the next intersection, Officer Murphy saw the sport-utility vehicle spin its wheels then accelerate rapidly. He, therefore, initiated a traffic stop.

{¶3} Officer Murphy testified that he approached the vehicle, identified himself, and told Mr. Washington the reason for the stop. As he was speaking with Mr. Washington, he noticed that Mr. Washington's speech was slurred and that there was an odor of alcoholic beverages coming from the vehicle. When Officer Murphy asked Mr. Washington where he was coming from and where he was going, Mr. Washington answered that he was on his way home from Taco Bell and showed Officer Murphy the bag with his food. A few seconds later, Officer

Murphy said something to Mr. Washington about the fact that Mr. Washington was coming from Taco Bell, at which time Mr. Washington asked Officer Murphy how he knew he had been to Taco Bell. Officer Murphy explained to Mr. Washington that he had just told him and showed him the bag with his food. Mr. Washington also later told Officer Murphy that he was on his way to his girlfriend's house, rather than his own house.

{¶4} Officer Murphy testified that he had Mr. Washington get out of his sport-utility vehicle to perform field sobriety tests. He asked Mr. Washington to say the alphabet from E to X, but Mr. Washington skipped the letter W. Officer Murphy asked Mr. Washington to repeat the test, and Mr. Washington again skipped the letter W. He asked Mr. Washington to tilt his head back and close his eyes, then asked him to touch his nose. Mr. Washington missed his nose 4 out of 6 times and also swayed from side to side and from front to back during the test. He then asked Mr. Washington to stand on one leg and count to thirty, but Mr. Washington repeated a few numbers and skipped several others on his way to 30. After he finished testing Mr. Washington, Officer Murphy, based on the totality of his observations, arrested him for operating a vehicle under the influence. At the police station, Mr. Washington registered .143 on a blood-alcohol concentration test.

{¶5} Mr. Washington moved to suppress the evidence against him, arguing that Officer Murphy did not have reason to stop or detain him or probable cause to arrest him without a warrant. At the hearing, Mr. Washington's lawyer narrowed the issue to whether Officer Murphy had "probable cause to arrest Mr. Washington based upon his observations and the field sobriety tests that were conducted in this case." Following the hearing, the municipal court denied the motion. The court determined that, even though Officer Murphy did not conduct any

field sobriety tests in substantial compliance with applicable standards, he had probable cause to arrest Mr. Washington based on the totality of the circumstances.

## FIELD SOBRIETY TESTS

{¶6} Mr. Washington's first assignment of error is that the municipal court incorrectly denied his motion to suppress because Officer Murphy did not have reasonable suspicion to justify ordering him from his vehicle to perform field sobriety tests. A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St. 3d 152, 2003-Ohio-5372, at ¶ 8. Generally, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id*. *But see State v. Metcalf*, 9th Dist. No. 23600, 2007-Ohio-4001, at ¶ 14 (Dickinson, J., concurring). The reviewing court "must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Burnside*, 2003-Ohio-5372, at ¶ 8.

{¶7} Although Mr. Washington argued in his motion to suppress that Officer Murphy did not have reasonable suspicion to stop him, he abandoned that argument at the suppression hearing. He, therefore, may not raise this issue on appeal. *See State v. Walker*, 9th Dist. No. 10CA0011, 2011-Ohio-517, at ¶ 25, 30 (explaining that a defendant may not raise an issue on appeal that was waived or abandoned below).

{¶8} Even if Mr. Washington had not abandoned the argument, we conclude that Officer Murphy had reasonable suspicion to ask him to perform field sobriety tests. *State v. Napier*, 9th Dist. No. 11CA0006, 2012-Ohio-394, at ¶ 16 ("[A] police officer does not need probable cause to conduct a field sobriety test; rather, he must simply have a reasonable suspicion of criminal activity."). "[R]easonable suspicion exists if an officer can point to specific and articulable facts indicating that a driver may be committing a criminal act." *Id*.

(quoting *State v. Osburn*, 9th Dist. No. 07CA0054, 2008–Ohio–3051, at ¶ 9). In this case, Mr. Washington's unusual driving, his marked lane violations, his slurred speech, his memory difficulties, and the odor of alcoholic beverages coming from his vehicle gave Officer Washington reasonable suspicion to have him engage in field sobriety tests. Mr. Washington's first assignment of error is overruled.

PROBABLE CAUSE

**{¶9}** Mr. Washington's second assignment of error is that the municipal court incorrectly concluded that Officer Murphy had probable cause to arrest him based on the observations he made during incorrectly administered field sobriety tests. He has argued that, although the court correctly determined that the results of the tests could not be used to support a finding of probable cause, it incorrectly determined that Officer Murphy's observations during the tests could be used to support a finding of probable cause.

**{¶10}** To determine whether a police officer had probable cause to arrest an individual for operating under the influence, we consider whether, under the totality of the facts and circumstances surrounding the arrest at the moment of arrest, the officer "had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence." *State v. Homan*, 89 Ohio St. 3d 421, 427 (2000), superceded on other grounds by statute as recognized in *State v. Schmitt*, 101 Ohio St. 3d 79, 2004-Ohio-37. In *Homan*, the Ohio Supreme Court explained that "[t]he totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered or where . . . the test results must be excluded for lack of . . . compliance." *Id.*

{¶11}  The municipal court determined that Officer Murphy had probable cause to arrest Mr. Washington "based on the totality of the circumstances . . . including the following:  1.  [Mr. Washington]'s traffic violations and unusual driving including crossing left of center several times, not proceeding on a green turn arrow, revving his engine and spinning his tires; 2.  The odor of an intoxicating beverage, slurred speech, and admission of drinking.  3.  Patrolman Murphy's observations of [Mr. Washington]'s failure to maintain his balance and/or follow instructions during the non-standardized field sobriety tests and during his encounter with [Mr. Washington] outside his vehicle."  Mr. Washington has argued that it was improper for the court to rely on observations Officer Murphy made while administering the non-standardized field sobriety tests.

{¶12}  In *State v. Schmitt*, 101 Ohio St. 3d 79, 2004-Ohio-37, the Ohio Supreme Court considered whether an officer who had not administered field sobriety tests in substantial compliance with applicable guidelines could testify about observations he made while the defendant was performing the nonscientific tests.  *Id.* at ¶ 10.  The Court concluded that he could, explaining that nonscientific tests that involve simple exercises "may easily reveal to the average layperson whether the individual is intoxicated."  *Id.* at ¶ 14.  We, therefore, conclude that the municipal court did not err when it based its probable cause determination, in part, on Officer Murphy's observation that Mr. Washington had difficulty maintaining his balance and following instructions while performing the nonscientific field sobriety tests.  *See State v. Wiesenbach*, 11th Dist. No. 2010-P-0029, 2011-Ohio-402, at ¶ 30 (relying on officer's observations of "unsteadiness and inability to follow instructions" during improperly administered field sobriety tests in determining whether officer had probable cause to arrest defendant for operating a vehicle under the influence of alcohol).

{¶13} Ultimately, it does not matter which facts the municipal court relied on because this Court must "independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *State v. Burnside*, 100 Ohio St. 3d 152, 2003-Ohio-5372, at ¶ 8. Upon review of the totality of the circumstances, we conclude that Officer Murphy had probable cause to arrest Mr. Washington for operating under the influence of alcohol. Mr. Washington's second assignment of error is overruled.

NONSCIENTIFIC TESTS

{¶14} Mr. Washington's third assignment of error is that the municipal court incorrectly refused to suppress Officer's Murphy's observations during the nonscientific field sobriety tests. He has argued that the court incorrectly determined that Officer Murphy could testify about his observations during the nonscientific field sobriety tests if the case went to trial. According to Mr. Washington, if field sobriety tests are not substantially complied with, there is a risk that the tests may detect an overly-tired driver, a driver lacking coordination, a driver suffering from a medical condition, or some other cause of poor driving rather than intoxication. Mr. Washington has also argued that an officer's observations during improperly administered field sobriety tests are too subjective to be reliable.

{¶15} While Mr. Washington appears to disagree with the Ohio Supreme Court's conclusion in *Schmitt*, this Court does not have any authority to overrule that decision. In *Schmitt*, the Ohio Supreme Court specifically held that "[a] law enforcement officer may testify at trial regarding observations made during a defendant's performance of nonscientific standardized field sobriety tests." *State v. Schmitt*, 101 Ohio St. 3d 79, 2004-Ohio-37, at syllabus; *State v. Lytle*, 9th Dist. No. 04CA0016-M, 2004-Ohio-4964, at ¶ 7.

{¶16} Mr. Washington has argued that the holding in *Schmitt* only applies to an officer's observations while administering "standardized" tests. While the Supreme Court used the word "standardized" in its syllabus, its opinion addressed "an officer's observations" during any "nonscientific field sobriety tests." *State v. Schmitt*, 101 Ohio St. 3d 79, 2004-Ohio-37, at ¶ 12, 14. The Court also explained that it is a person's difficulty performing simple exercises that may reveal whether he is intoxicated. We, therefore, conclude that, because it is the totality of an officer's perceptions that assists a jury in determining whether someone was driving while intoxicated, there is no reason that *Schmitt* should be limited to an officer's observations during standardized non-scientific field sobriety tests as opposed to other non-scientific field sobriety tests. *See id.* at ¶ 14.

{¶17} Mr. Washington has also argued that Officer Murphy's testimony would have been prohibited under Section 4511.19(D)(4)(b) of the Ohio Revised Code. At the time of his arrest in July 2009, Section 4511.19(D)(4)(b) provided that an officer may testify about the results of a field sobriety test if the test was administered in substantial compliance with testing standards. That section did not prohibit an officer testifying about his observations during the test and, in fact, Section 4511.19(D)(4)(c) provided that "Division (D)(4)(b) of this section does not limit or preclude a court, in its determination of whether the arrest of a person was supported by probable cause or its determination of any other matter in a criminal prosecution . . . , from considering evidence or testimony that is not otherwise disallowed by division (D)(4)(b) of this section."

{¶18} The municipal court correctly determined that Officer Murphy was not prohibited from testifying about his observations during the nonscientific field sobriety tests. Mr. Washington's third assignment of error is overruled.

CONCLUSION

**{¶19}** The municipal court correctly denied Mr. Washington's motion to suppress. The judgment of the Oberlin Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Oberlin Municipal Court, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

———————————————
CLAIR E. DICKINSON
FOR THE COURT

WHITMORE, P. J.
MOORE, J.
CONCUR.

APPEARANCES:

JACK W. BRADLEY and MICHAEL E. STEPANIK, Attorneys at Law, for Appellant.

FRANK S. CARLSON, Attorney at Law, for Appellee.