[Cite as *State v. Thayer*, 2012-Ohio-3301.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

STATE OF OHIO               C.A. No.      11CA0045-M

     Appellee

     v.                              APPEAL FROM JUDGMENT
                                           ENTERED IN THE
JEFFREY G. THAYER               MEDINA MUNICIPAL COURT
                                           COUNTY OF MEDINA, OHIO
     Appellant                    CASE No.      10 TRC 07725

DECISION AND JOURNAL ENTRY

Dated: July 23, 2012

MOORE, Judge.

{¶1} Defendant-Appellant, Jeffrey G. Thayer ("Thayer"), appeals from the February 8, 2011 judgment entry of the Medina Municipal Court denying his motion to suppress. For the following reasons, we affirm.

I.

{¶2} On November 19, 2010, while heading westbound on West Smith Road, Ohio State Highway Patrol Trooper Daniel Jones ("Trooper Jones") observed Thayer drive on the double yellow line in the middle of the road. The tires of Thayer's car did not extend beyond the double yellow line, nor did the car cross over the double yellow line into any other lanes of traffic. Trooper Jones followed him for approximately two miles while recording Thayer's driving with a video recording device in his patrol car.

{¶3}    After some time, Thayer activated his right turn signal, decelerated, and turned right onto Erhart Road.  As he did so, Trooper Jones again observed him drive on the double yellow line.  At that time, Trooper Jones activated his lights and initiated a traffic stop.

{¶4}    Upon approaching Thayer's car, Trooper Jones noticed that he had "red and glassy eyes," and also "smelled a strong odor[1] of alcoholic beverage coming from inside the vehicle."  Trooper Jones asked him to step out of the car and determined that the odor was coming from Thayer's mouth.  At that time, Trooper Jones asked Thayer to walk with him back to the rear of the patrol car and inquired as to whether he had consumed any alcohol.  Thayer answered that he had four drinks the whole night.

{¶5}    Subsequently, off camera, Trooper Jones administered the horizontal gaze nystagmus ("HGN") test, a standardized field sobriety test.  During the HGN, Trooper Jones observed six out of six clues, possibly indicating the percentage that Thayer could test over the legal limit of alcohol in his blood.  Trooper Jones then attempted to have Thayer perform the walk and turn test and the one-legged stand test.  However, due to Thayer's spinal cord injury, Trooper Jones did not administer these additional tests.

{¶6}    At approximately 9:46 p.m., Trooper Jones placed Thayer under arrest and issued him a citation for operating a vehicle while under the influence of alcohol ("OVI"), in violation of R.C. 4511.19(A)(1)(a), operating a vehicle with a prohibited breath alcohol content, in violation of R.C. 4511.19(A)(1)(d), and driving left of center, in violation R.C. 4511.25.

---

[1] We note, however, that in his police report, Trooper Jones indicated only a "mild" odor, while his testimony indicated a "strong" odor.

**{¶7}** The citation was filed in Medina Municipal Court on November 22, 2010. That same day, Thayer entered a plea of not guilty to all charges. Further, Thayer, through counsel, requested a trial by jury.

**{¶8}** Thayer filed a motion to suppress wherein he challenged the constitutionality of the traffic stop. In his motion, he argued that (1) Trooper Jones did not have probable cause or a reasonable, articulable suspicion to perform the traffic stop, (2) pursuant to R.C. 4511.19(D)(4)(b) and the National Highway Traffic Safety Administration ("NHTSA") training manual, Trooper Jones' administration of the field sobriety test failed to substantially comply with standardized testing procedures, and (3) Trooper Jones lacked probable cause to arrest him for OVI.

**{¶9}** The trial court held a hearing on Thayer's motion to suppress. At the hearing, Trooper Jones testified on behalf of the State. Thayer did not call any witnesses to testify on his behalf.

**{¶10}** On February 8, 2011, the trial court journalized a judgment entry denying Thayer's motion to suppress. In its judgment entry, the trial court found that "traveling on the double yellow line establishes the potential traffic offense of failing to drive 'upon the right half of the roadway' as required by R.C. 4511.25(A)." As a result, the trial court determined there was reasonable and articulable suspicion to justify the initial detention of Thayer's car. In addition, the trial court found that Trooper Jones had conducted the HGN test in substantial compliance with NHTSA standards, and under the totality of the circumstances, Trooper Jones had probable cause to arrest Thayer for OVI.

**{¶11}** Thayer changed his plea to no contest as to OVI in violation of R.C. 4511.19(A)(1)(a), and the State dismissed the other charges.

{¶12} The trial court sentenced him to a fine, license suspension, limited driving privileges with restrictive plates, and 180 days in jail, with 170 days suspended, and 10 days mandatory jail time.

{¶13} Thayer filed a timely notice of appeal, setting forth three assignments of error for our consideration. His sentence was stayed pending this appeal.

II.

**ASSIGNMENT OF ERROR I**

WHEN THE STATE TROOPER DOES NOT CLAIM [THAYER'S] VEHICLE WENT LEFT OF CENTER BUT INSTEAD ONLY TRAVELED ONTO THE DOUBLE YELLOW LINE, AND THE TRIAL COURT FINDS THAT OPERATION "ESTABLISHES THE POTENTIAL TRAFFIC OFFENSE OF FAILING TO DRIVE 'UPON THE RIGHT HALF OF THE ROADWAY' AS REQUIRED BY [R.C. 4511.25(A)], DOES THE RESULTING TRAFFIC STOP VIOLATE [THAYER'S] CONSTITUTIONAL RIGHT AGAINST ILLEGAL SEIZURES?

{¶14} "An appellate court's review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact." *State v. Campbell*, 9th Dist. No. 05CA0032-M, 2005-Ohio-4361, ¶ 6. "The trial court acts as the trier of fact during a suppression hearing, and is therefore best equipped to evaluate the credibility of witnesses and resolve questions of fact." *Id.* This Court will accept the factual findings of the trial court if they are supported by some competent, credible evidence. *See State v. Balog*, 9th Dist. No. 08CA0001-M, 2008-Ohio-4292, ¶ 7, citing *State v. Searls*, 118 Ohio App.3d 739, 741 (5th Dist.1997). "However, the application of the law to those facts will be reviewed de novo." *Id.*

{¶15} In his first assignment of error, Thayer argues that the traffic stop amounted to an unconstitutional seizure because (1) the evidence demonstrates that he drove lawfully on the right half of the roadway, and (2) the trial court's legal conclusion that a potential traffic violation amounted to reasonable and articulable suspicion is contrary to law. In support of this

argument, Thayer contends that based upon Trooper Jones' testimony, and pursuant to R.C. 4511.25, he did not commit a violation of the law because, although his tires touched the double yellow line, the car never crossed the double yellow line. He further contends that he did not commit a traffic violation, and, as such, Trooper Jones did not have reasonable and articulable suspicion or probable cause to justify a traffic stop. Finally, Thayer contends that the facts in this case distinguish it from our decision in *Campbell*.

{¶16} In response, the State argues that based upon the testimony of Trooper Jones, there was reasonable and articulable suspicion to justify the stop because Trooper Jones observed a marked lanes violation, pursuant to R.C. 4511.33(A), or a lanes of travel violation, pursuant to R.C. 4511.25(A). In support of this argument, the State cites a Twelfth District Court of Appeal's decision, *State v. Burton*, 12th Dist. No. CA2005-12-528, 2006-Ohio-4048. In *Burton*, the Twelfth District held that, pursuant to R.C. 4511.33(A), a police officer had probable cause to stop the appellant due to a marked lanes violation, where the appellant, for two to three seconds, drove directly on the center double yellow line with his left tires prior to going back into his lane of travel.

{¶17} It is well-settled that "[a] traffic stop constitutes a seizure within the meaning of the Fourth Amendment." *Campbell* at ¶ 10, citing *Whren v. United States*, 517 U.S. 806, 809-810 (1996). "However, an investigative stop of a motorist does not violate the Fourth Amendment if the officer has a reasonable suspicion that the individual is engaged in criminal activity." *Campbell* at ¶ 10, citing *Maumee v. Weisner*, 87 Ohio St.3d 295, 299 (1999). "To justify a particular intrusion, the officer must demonstrate 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Weisner* at 299, quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968). "In evaluating the facts and inferences

supporting the stop, a court must consider the totality of the circumstances as 'viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training.'" *State v. Sweatt*, 9th Dist. No. 25147, 2010-Ohio-2989, ¶ 7, citing *State v. Bobo*, 37 Ohio St.3d 177, 179 (1988), quoting *United States v. Hall*, 525 F.2d 857, 859 (C.A.D.C.1976). "Thus, 'if the specific and articulable facts available to an officer indicate that a driver may be committing a criminal act, which includes the violation of a traffic law, the officer is justified in making an investigative stop.'" *State v. Hoder*, 9th Dist. No. 03CA0042, 2004-Ohio-3083, ¶ 8, quoting *State v. Shook*, 9th Dist. No. 93CA005716, 1994 WL 263194, *5 (June 15, 1994).

{¶18} In the present matter, Trooper Jones twice observed Thayer drive on the double yellow line in the middle of the road: once while traveling westbound on West Smith Road, and again when appellant made a wide right turn onto Erhart Road. Also, the State introduced the officer's dashboard camera video showing Thayer's back tires fully covering the double yellow line as he makes a wide right turn onto Erhart Road.

{¶19} On direct examination, Trooper Jones testified that he initially observed appellant go "left of center" while traveling westbound on West Smith Road. The following line of questioning ensued:

Q. Was your initial observation on video?

A. Not the first initial observation, no.

Q. Were the lanes marked?

A. Yes.

Q. You say left of center, did he travel on the center lane beyond the center line? Please describe for the Court what you observed.

A. What I saw of the first initial was that *the tires were on the double yellow line*.

Q. And the double yellow line is in the middle of the road, correct?

A. Yes, sir.

Q. And did the vehicle extend beyond the double yellow into, or beyond, the center at that point?

A. Not into the other lanes, no, sir.

Q. Okay. You said beyond the center?

A. Of his lane, yes.

* * *

Q. Okay. Again, back to the traffic infraction. You testified that you observed the defendant travel left of center prior to the video coming on?

A. Yes, sir.

Q. Did you observe it at any other time?

A. Once he made the turn onto Erhart.

 (Emphasis added.)

Further, on cross-examination, Trooper Jones provided more detailed testimony regarding his observations, as well as observations from the video recording taken from the dash-board camera in his patrol car:

Q. You would agree with me that the video recording that we just saw here in the Court where you are following [Thayer's] vehicle fails to show any left of center violation, correct?

A. Well, the first initial is when the video wasn't on.

Q. So your answer to my question, Trooper Jones, would [be] yes, Mr. Sheldon, that's correct, the video does not show [Thayer's] vehicle going left of center, is that your answer?

A. At the turn on Erhart.

Q. At the turn on Erhart, what, Trooper Jones?

A. *[Thayer] drives on the double yellow line again*.

Q. He did not cross over the opposing lane, correct?

A. Correct.

Q. So the very edge of [Thayer's] tires touch the yellow line, is that correct?

A. *No. The tires were covering the double yellow line.*

(Emphasis added.)

\* \* \*

Q. Now, for the approximately two miles you followed [Thayer], that's on the video, it doesn't show a traffic violation, correct?

A. Not the first initial one I saw. The second one it does.

Q. Okay. And you claim that's on there?

A. Second one, yes.

Q. And what was that traffic violation?

A. When [Thayer] went, turned right onto Erhart his tires again drove over the— *drove on the double yellow line*.

Q. Okay. And what is that traffic violation, Trooper Jones?

A. I labeled it as left of center, sir.

(Emphasis added.)

{¶20} R.C. 4511.25 states, in relevant part, that "[u]pon all roadways of sufficient width, a vehicle or trackless trolley shall be driven upon the right half of the roadway \* \* \*." While the record provides no evidence of Thayer driving left of center and violating R.C. 4511.25, the record does show that Trooper Jones observed Thayer violate a different traffic law. R.C. 4511.36(A) states, in relevant part, that "[t]he driver of a vehicle intending to turn at an intersection shall be governed by the following rules: (1) [a]pproach for a right turn and a right turn shall be made as close as practicable to the right-hand curb or edge of the roadway."

{¶21} Here, although Trooper Jones did not cite Thayer for violating R.C. 4511.36(A)(1), Trooper Jones' testimony clearly establishes that he witnessed him violate that

traffic provision when Thayer made a wide right turn onto Erhart Road and, in doing so, drove on the double yellow line in the middle of the road. Additionally, the video evidence clearly demonstrates that, as Thayer turned right onto Erhart road, there were no obstacles, such as a parked vehicle, preventing him from staying as close as practicable to the right-hand curb or edge of the roadway. As stated above, "[a] police officer's observation of a person violating a traffic law is sufficient to give rise to the officer's reasonable conclusion that the person is engaged in criminal activity." *Campbell* at ¶ 11.

{¶22} Therefore, based upon the record before us, the traffic stop was reasonable as a matter of law, and the trial court properly denied Thayer's motion to suppress.

{¶23} Thayer's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

WHERE THE ORIGINAL REASON FOR THE TRAFFIC STOP IS EXTENDED BEYOND THAT REASON (TRAVELING ON RIGHT HALF OF ROADWAY VIOLATION) AND THE TROOPER REQUESTS [THAYER] TO EXIT HIS VEHICLE AND OBSERVES THAT [THAYER'S] EYES ARE RED AND GLASSY, DOES THE TROOPER'S CONTINUED DETENTION OF [THAYER] TO PERFORM FIELD SOBRIETY TESTS AMOUNT TO AN UNREASONABLE SEIZURE IN VIOLATION OF [THAYER'S] FOURTH AMENDMENT AND OHIO CONSTITUTIONAL RIGHTS?

{¶24} In his second assignment of error, Thayer argues that, after the initial traffic stop, Trooper Jones' continued detention of him amounted to an unreasonable seizure in violation of the Fourth Amendment to the United States and Ohio constitutions. Specifically, he argues that the extension of the initial traffic stop was not based upon any reasonable articulable suspicion that he was under the influence of alcohol. Further, Thayer contends that (1) having red and glassy eyes, and (2) smelling a strong odor of alcohol coming from the vehicle, do not rise to the level of reasonable articulable suspicion to further detain him.

{¶25} In response, the State argues that (1) Thayer's red and glassy eyes, (2) the odor of alcohol in the vehicle, and (3) his admission to consuming alcohol clearly provided Trooper Jones with additional specific and articulable facts giving rise to a reasonable suspicion beyond that which prompted the initial traffic stop. In support of this argument, the State cites our decision in *State v. Tomko*, 9th Dist. No. 19253, 1999 WL 1037762 (Nov. 3, 1999).

{¶26} As addressed in *Tomko*, "[w]hen an appellate court reviews the propriety of an investigatory stop, it must consider the totality of the circumstances." *Tomko* at *2, citing *Bobo* at paragraph one of the syllabus. "Probable cause is not necessary to conduct a field sobriety test." *Tomko* at *2. "Rather, reasonable suspicion of criminal activity will support further investigation." *Id*. "Essentially, reasonable suspicion exists if an officer can point to specific and articulable facts indicating that a driver may be committing a criminal act." *Id*. Additionally, during an investigative traffic stop, "if an officer encounters 'additional specific and articulable facts' giving rise to a reasonable suspicion beyond that which prompted the stop, the officer may continue to detain the individual to investigate those new concerns." *Id*. quoting *Shook* at *3.

{¶27} In *Tomko* at *2, the driver was travelling 75 miles per hour in a 65 mile per hour zone and was stopped for speeding. During the initial traffic stop, the trooper observed factors, beyond those which prompted the stop, giving him reason to further detain the appellant in order to conduct field sobriety tests. *Id*. at *3. The trooper testified that the driver "smelled of alcohol" and "had blood-shot eyes." *Id*. Tomko argued that his prolonged detention was unlawful because "the smell of alcohol alone does not constitute reasonable suspicion of alcohol impairment [.]" *Id*. at *2. In affirming the judgment of the trial court, we stated that:

> The combination of [Tomko's] bloodshot eyes, a smell of alcohol, and his admission that he had consumed two beers was sufficient to provide [the trooper]

with reasonable suspicion to detain [Tomko] to investigate a possible violation of Ohio's laws prohibiting the operation of a motor vehicle while under the influence of alcohol.

*Id*. at *3.

**{¶28}** Here, similar to *Tomko*, the initial traffic stop was proper because Trooper Jones observed a violation of R.C. 4511.36(A)(1). Further, upon approaching Thayer's vehicle, Trooper Jones testified that Thayer "had glassy eyes, and [that he] smelled a strong odor of alcoholic beverage coming from inside the vehicle." Because Thayer's wife was a passenger in the car, Trooper Jones asked him to step out of the car in order to determine the source of the odor. Trooper Jones explained that, when Thayer stepped out of his vehicle, he determined that the smell of alcoholic beverage was coming from his mouth. Trooper Jones further testified:

Q. What did you do next?

A. Once * * * he got out of the vehicle, I asked him to take a walk back to the patrol car, to the rear of the patrol car.

Q. Did you ask him whether he had been consuming alcohol?

A. Prior to the patrol car, I don't believe. * * *

Q. Prior to arresting did you?

A. Yes.

Q. Did he tell you whether he had been consuming any alcohol?

A. Yes.

Q. Did he say how much?

A. He said he had four.

Q. Okay.

A. The whole night.

Subsequently, Trooper Jones administered the HGN test, and observed six out of six clues. At that time, Trooper Jones arrested appellant for OVI.

{¶29} Based upon the record before us, and under the totality of the circumstances, we cannot say that Trooper Jones improperly detained Thayer after the initial traffic stop. The combination of Thayer's red and glassy eyes, the odor of alcohol coming from his mouth, and his admission that he had consumed four alcoholic beverages over the course of the evening was sufficient to provide Trooper Jones with reasonable suspicion to detain Thayer in order to investigate whether he had been operating a vehicle while under the influence of alcohol.

{¶30} Thayer's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

UNDER THE TOTALITY OF CIRCUMSTANCES, DID THE TROOPER HAVE PROBABLE CAUSE TO ARREST [THAYER] WHEN THE TROOPER FAILED TO PERFORM THE HGN TEST IN SUBSTANTIAL COMPLIANCE WITH THE NHTSA MANUAL AND HE BASED PROBABLE CAUSE TO ARREST FOR OVI ON AN ADMISSION TO CONSUMPTION OF ALCOHOL, A MILD ODOR OF ALCOHOLIC BEVERAGE, RED AND GLASSY EYES, AND SUCH IMPROPERLY PERFORMED HGN TEST THAT DID NOT SHOW IMPAIRMENT?

{¶31} In his third assignment of error, Thayer argues that Trooper Jones lacked probable cause to arrest him for OVI based upon (1) an admission to consuming some alcohol, (2) a mild odor of alcoholic beverage, (3) red and glassy eyes, and (4) an improperly performed HGN test.

{¶32} In response, the State argues that, under the totality of the circumstances, the trial court correctly determined that probable cause existed to arrest appellant for OVI. The State supports its argument with our decision in *City of Tallmadge v. Barker*, 9th Dist. No. 24414, 2009-Ohio-1334. In *Barker* at ¶ 19, we concluded that probable cause existed to arrest Barker for OVI where the officer had knowledge of four clues on the HGN test, had knowledge of bad driving, and Barker admitted that she had been drinking alcoholic beverages.

{¶33} "'In determining whether the police had probable cause to arrest an individual for [OVI], we consider whether, at the moment of arrest, the police had sufficient information,

derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence.'" *Barker* at ¶ 12, quoting *State v. Homan*, 89 Ohio St.3d 421, 427 (2000), superceded by R.C. 4511.19(D)(4)(b) on other grounds as recognized by *State v. Schmitt*, 101 Ohio St.3d 79, 2004-Ohio-37. Additionally, "[e]ven without positive results on field sobriety testing, the totality of the facts and circumstances may support probable cause to arrest for a violation of Section 4511.19(A) of the Ohio Revised Code." *State v. Walters*, 9th Dist. No. 11CA0039-M, 2012-Ohio-2429, ¶ 10. "The amount of evidence necessary for probable cause to suspect a crime is being committed is less evidence than would be necessary to support a conviction of that crime at trial." *Id*., quoting *State v. McGinty*, 9th Dist. No. 08CA0039-M, 2009-Ohio-994, ¶ 11. Further. "[i]t is necessary to show merely that a probability of criminal activity exists, not proof beyond a reasonable doubt, or even proof by a preponderance of evidence that a crime is occurring." *Walters* at ¶ 10.

{¶34} Here, in determining that Trooper Jones had probable cause to arrest appellant for OVI, the trial court stated:

> The Court finds that this observation concerning operation, combined with [Thayer's] admission as to the consumption of alcohol, the odor of an alcoholic beverage coming from the vehicle and later from [Thayer's] mouth when he was outside the vehicle, regardless of how its strength is characterized, combined with red and glassy eyes and a score of [six] out of six on the HGN is adequate under a totality of the circumstances test, to establish probable cause to arrest [Thayer] for operating a vehicle under the influence of alcohol.

Based upon the record, we conclude that the above-stated facts are supported by competent, credible evidence. We note, however, that in its judgment entry, the trial court misstated the sequence in which Trooper Jones learned that Thayer consumed four alcoholic beverages. In the trial court's recitation of facts, Trooper Jones asked Thayer whether he had consumed any alcohol prior to his stepping out of the car. However, through Trooper Jones' testimony, the

record establishes that Trooper Jones learned Thayer had consumed alcohol after he stepped out of the car. Because the trial court does not base its conclusion regarding probable cause on the sequence in which these events occurred, and because the facts as testified to by the trooper provide competent and credible evidence, we find that Thayer was not prejudiced by this error.

**{¶35}** Thayer also challenges Trooper Jones' administration of the HGN test, arguing that Trooper Jones failed to substantially comply with NHTSA standards in administering the test. Specifically, he contends that Trooper Jones erred in three respects: (1) Trooper Jones never indicated whether Thayer had distinct and sustained nystagmus at maximum deviation, (2) Trooper Jones did not substantially comply with the third part of the HGN test which determines the onset of nystagmus prior to forty-five degrees, and (3) Trooper Jones had no idea as to the significance of the HGN results.

**{¶36}** The record reveals that Trooper Jones provided detailed testimony regarding the training and techniques used to administer the HGN test. First, Trooper Jones explained that he was trained pursuant to the standardized principals set forth in the NHTSA manual, and that those same principals were in effect at the time of the traffic stop. Second, he explained that in administering the HGN test, he looked for six clues, or three on each eye. However, prior to starting the HGN test, Trooper Jones (1) looked for equal pupil size in each eye, and (2) checked to see if Thayer's eyes were tracking equally.

**{¶37}** After verifying that Thayer's pupils were equal in size and tracking equally, Trooper Jones administered the first part of the HGN test known as the test of lack of smooth pursuit. As per the NHTSA manual, he administered this test twice on each eye, in order to look for nystagmus, or involuntary jerking. In doing so, he testified that he observed involuntary jerking in both of Thayer's eyes.

{¶38} Then Trooper Jones administered the second part of the HGN test known as maximum deviation. Again, he administered this part of the HGN test twice and observed jerking in both of Thayer's eyes.

{¶39} Finally, Trooper Jones administered the third part of the HGN test known as onset 45 degrees. According to his testimony, he administered this part of the HGN test twice and observed jerking in both of Thayer's eyes.

{¶40} Additionally, Trooper Jones testified that he observed six out of six clues, and that six clues are "the total number of clues on the HGN," indicating "a percentage that the driver is going to test over a point one."

{¶41} In its judgment entry, the trial court found as follows:

> The Court finds based upon the trooper's testimony and the timeframe involved that the State has established by clear and convincing evidence that the [HGN] test was conducted in substantial compliance with the NHTSA standards then in effect. The results of the [HGN] test are admissible both for probable cause and at trial on the merits.

As stated above, "[t]he trial court acts as the trier of fact during a suppression hearing, and is therefore best equipped to evaluate the credibility of witnesses and resolve questions of fact." *Campbell*, 2005-Ohio-4361, at ¶ 6. Therefore, we decline to substitute our own judgment for that of the trial court regarding the weight given Trooper Jones' testimony.

{¶42} In *State v. Slates*, 9th Dist. No. 25019, 2011-Ohio-295, ¶ 28-30, this Court addressed the issue of field sobriety testing and probable cause. *Slates* involved a traffic stop where the officer first observed the driver traveling without headlights and straddling the lane divider between interstates 76 East and 77 South. Slates then stopped on the entrance ramp to 77 South and turned on his hazard lights. The officer testified that he smelled alcohol emanating from Slates' car and that Slates admitted to "having a 'few' drinks that evening." *Id*. at ¶ 25.

Prior to arresting Slates for OVI, the officer administered the HGN test. We concluded that, based upon the officer's testimony regarding his administration of the HGN test, the State established that the officer "conducted the HGN test in substantial compliance with the prescribed instructions." *Id*. at ¶ 28. However, we also concluded that even "assuming the State failed to establish substantial compliance, the officer still had probable cause to arrest Slates." *Id*.

{¶43} In support of our conclusion in *Slates*, we explained "[t]his Court has stated that the totality of the facts and circumstances can support probable cause for arrest even in the absence of the administration of field sobriety tests," and "'even when the results of the field sobriety tests must be excluded for lack of compliance to standardized procedures.'" *Id*. at ¶ 29, quoting *State v. Sunday*, 9th Dist. No. 22917, 2006-Ohio-2984, ¶ 32.

{¶44} Here, Trooper Jones testified that: (1) he twice observed Thayer drive on the double yellow line in the middle of the road, (2) Thayer's eyes were red and glassy, (3) an odor of alcoholic beverage emanated from Thayer's mouth, and (4) Thayer admitted to consuming four alcoholic beverages.

{¶45} Based upon our ruling in *Slates*, even if we were to agree that Trooper Jones did not substantially comply with the standards for administering the HGN test, we would yet conclude that under the totality of the circumstances and the record before us, Trooper Jones had probable cause to arrest Thayer for OVI.

{¶46} Thayer's third assignment of error is overruled.

### III.

{¶47} Accordingly, the judgment entry of the Medina Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Medina Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

WHITMORE, P. J.
DICKINSON, J.
CONCUR.

APPEARANCES:

DAVID C. SHELDON, Attorney at Law, for Appellant.

WILLIAM A. LEFAIVER, Attorney at Law, for Appellant.

GREG HUBER, Prosecuting Attorney, and ARTHUR E. FOTH, Assistant Prosecuting Attorney, for Appellee.