[Cite as *State v. Davis*, 2020-Ohio-473.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No.     29273 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| TYRONE DAVIS | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No.     CR-2018-02-0508 |

DECISION AND JOURNAL ENTRY

Dated: February 12, 2020

SCHAFER, Judge.

{¶1} Defendant-Appellant, Tyrone Davis, appeals his conviction in the Summit County Court of Common Pleas for operating a vehicle under the influence. This Court affirms.

I.

{¶2} On February 6, 2018, at approximately 3:00 a.m., Officer Joseph Beltrami of the Northfield Police Department was on patrol when he observed a dark-colored truck swerving in an irregular pattern. The truck pulled into a motel parking lot and Officer Beltrami initiated a traffic stop. Officer Beltrami made contact with the driver who identified himself as Tyrone Davis. Officer Beltrami asked Davis if he had been drinking that night. Davis replied that he had. While Officer Beltrami was speaking with Davis, Officer Vincent Cangelosi also of the Northfield Police Department arrived on the scene as back up.

{¶3} Officer Beltrami observed Davis's eyes to be glossy and watery. At that point, he asked Davis to step out of the vehicle and to perform field sobriety tests. When Davis stepped

out of the vehicle Officer Beltrami detected the odor of alcohol. Officer Beltrami administered the standard field sobriety tests to Davis while Officer Cangelosi remained on scene and observed. Following the field sobriety tests, Officer Beltrami requested Davis take a portable breath test. Davis refused. Officer Beltrami then placed Davis under arrest for operating a vehicle under the influence ("OVI").

{¶4} The Summit County Grand Jury indicted Davis on one count of OVI in violation of R.C. 4511.19(A)(1)(a), a felony of the fourth degree, and one count of OVI in violation of R.C. 4511.19(A)(2)(a), a felony of the fourth degree. Davis entered a plea of not guilty at his arraignment, and the matter proceeded through the pretrial process.

{¶5} Davis filed a motion to suppress evidence asserting that the field sobriety tests were not conducted in substantial compliance with the National Highway Transportation Safety Administration ("NHTSA") standards and that the officers did not have probable cause to arrest him for OVI. Following a hearing, the trial court found that Officer Beltrami administered all three of the field sobriety tests—the horizontal gaze nystagmus ("HGN"), the walk and turn, and the one-leg stand—in substantial compliance with the NHTSA standards. The trial court also determined that the officers had probable cause to arrest Davis for OVI.

{¶6} The matter proceeded to a jury trial. The jury returned a verdict finding Davis guilty of both counts in the indictment. The trial court accepted the jury's verdict and found Davis guilty on both counts. The trial court thereafter merged count one and two. The State elected to proceed on Count I, and the trial court imposed sentence accordingly.

{¶7} Davis filed this timely appeal, raising two assignments of error for our review.

II.

## Assignment of Error I

**The trial court erred in denying [Davis]'s [m]otion to [s]uppress. [ ]**

{¶8}   In his first assignment of error, Davis contends that the trial court erred when it denied his motion to suppress because (1) the State failed to prove by clear and convincing evidence that the officers administered his field sobriety tests in compliance with the NHTSA manual and guidelines; and (2) the officers lacked probable cause to arrest Davis for OVI.  We disagree on both points.

{¶9}   Appellate review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact.  *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.  "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses."  *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 100, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992).  Accordingly, an appellate court must accept a trial court's findings of fact when they are supported by competent, credible evidence.  *Id*.  However, accepting those facts as true, the appellate court must independently determine, without deference to the trial court's conclusion, whether those facts satisfy the applicable legal standard.  *Burnside* at ¶ 8.

## Field Sobriety Tests

{¶10}  In a journal entry following the suppression hearing, the trial court found that Officer Beltrami administered the field sobriety tests in substantial compliance with NHTSA.  In making this determination, the trial court stated that Officer Beltrami correctly articulated the appropriate procedures for administering the tests, and noted that he testified that he administered the tests in accordance with NHTSA standards.  The court found that Officer

Beltrami adequately demonstrated and explained the tests, and that he administered the tests on a dry, level, and hard surface. The trial court further found that the video evidence presented at the hearing showed that the tests were administered in substantial compliance with the appropriate standards.

{¶11} On appeal, Davis first argues that Officer Beltrami's testimony during the hearing showed a lack of substantial compliance because he lacked knowledge of what constituted a "clue" of impairment pursuant to the NHTSA manual on the walk and turn test. Davis next argues that Officer Cangelosi's testimony showed a lack of substantial compliance because he lacked knowledge of what constituted a "clue" of impairment pursuant to the NHTSA manual on the one leg stand test. Davis does not assert that Officer Beltrami's instructions to Davis were not in substantial compliance with the NHTSA standards nor does Davis challenge the trial court's finding that Officer Beltrami substantially complied with the NHTSA standards as to the HGN test.

{¶12} Pursuant to R.C. 4511.19(D)(4)(b),

> an officer may testify concerning the results of a field sobriety test, and the prosecution may introduce the results of such a test, if "the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the [NHTSA] * * * ."

*State v. George*, 9th Dist. Wayne No. 13CA0036, 2014-Ohio-4123, ¶ 7, quoting R.C. 4511.19(D)(4)(b). The State bears the burden of demonstrating substantial compliance by clear and convincing evidence. *State v. Spees*, 9th Dist. Medina No. 17CA0061-M, 2018-Ohio-2568, ¶ 17. "'A determination of whether the facts satisfy the substantial compliance standard is made on a case-by-case basis.'" *State v. Sayler*, 9th Dist. Medina No. 15CA0094-M, 2016-Ohio-7083, ¶ 15, quoting *State v. Fink*, 12th Dist. Warren Nos. CA2008-10-118, CA2008-10-119, 2009-

Ohio-3538, ¶ 26. "The [S]tate may demonstrate what the NHTSA standards are through competent testimony and/or by introducing the applicable portions of the NHTSA manual." (Internal quotations and citations omitted.) *Sayler* at ¶ 15;

{¶13} Davis argues that Officer Beltrami incorrectly scored the walk and turn test due to a lack of knowledge of the NHTSA standards. During the suppression hearing, Officer Beltrami testified as to the NHTSA guidelines for conducting the walk and turn test and how he administered that test. He stated that when performing the test, he asks the individual to stand on a flat, dry surface with his left foot on an imaginary line. He then asks him to hold his right foot in front of his left foot touching heel to toe and holding his hands down at his sides while he explains the instructions. He then simultaneously demonstrates and explains to the individual that he is to take nine heel to toe steps down the line, and then take nine heel to toe steps back.

{¶14} Officer Beltrami further testified that he conducted the walk and turn test in this case in compliance with the above guidelines. Officer Beltrami testified that he found a flat, relatively dry surface on which to conduct the test. While administering the test, he observed four total clues, which included Davis either stepping off the line or using his arms to balance. Officer Beltrami admitted on cross-examination that he did not recall the exact step on which Davis stepped off the line or how far off the line he stepped, but reasserted that Davis did in fact step off the imaginary line. In determining that Davis was using his arms to balance, Officer Beltrami noted that Davis had not left his arms by his side as instructed, but instead had placed his hands in his pockets. Because his hands were in his pockets, Officer Beltrami interpreted Davis's elbows "sticking out" as using his arms to balance. Officer Beltrami acknowledged on cross-examination that the NHTSA manual states an indicator of impairment on the walk and turn test is for a person to raise his arms six inches. Nonetheless, Officer Beltrami stated that

Davis was instructed to have his arms at his side and he interpreted Davis's elbow being "out" as Davis using his arms to balance.

{¶15} Although Davis also challenges Officer Cangelosi's knowledge of what the NHTSA standards state is a valid clue of impairment on the one leg stand test, the trial court found and the officers' body-camera footage showed that Officer Beltrami administered the tests while Officer Cangelosi merely observed. Additionally, although the trial court found that Officer Beltrami observed two clues during the one leg stand test, it made no finding as to what Officer Cangelosi may or may not have observed. A review of the record shows that these findings are based on competent credible evidence. Officer Beltrami testified that he administered the tests and that his partner, Officer Cangelosi observed. Officer Cangelosi also testified that Officer Beltrami conducted the field sobriety tests.

{¶16} Officer Beltrami testified as to the NHTSA guidelines for conducting the one leg stand test and how he administered those tests in this case. Officer Beltrami stated that he explains and demonstrates the test to the individual before administering the test. Officer Beltrami stated that when conducting the test, he asks the individual to stand with his hands at his side with feet together. He then asks him to raise and hold the foot of his choice six inches above the ground while counting out loud, one, one-hundred; two, one-hundred; and on until he asks them to stop. During the test, he watches to observe any swaying, using of arms to balance, and lowering of the foot. Officer Beltrami stated that he conducted the test in compliance with this standard. Officer Beltrami further testified that while administering the one leg stand test in this case, he observed that Davis was swaying and using his arms to balance.

{¶17} Based on the foregoing, we conclude that Davis has not shown that the trial court erred by determining Officer Beltrami substantially complied with the NHTSA guidelines regarding the administration of field sobriety tests.

**Probable Cause to Arrest**

{¶18} Davis also contends that the trial court erred by denying his motion to suppress because the officers lacked probable cause to arrest him. We disagree.

{¶19} "An officer has probable cause to arrest an individual for impaired driving if, 'at the time of arrest, the officer had sufficient facts derived from a reasonably trustworthy source to cause a prudent person to believe the suspect was driving under the influence.'" *Spees*, 2018-Ohio-2568, at ¶ 30, quoting *State v. Hopp*, 9th Dist. Summit No. 28095, 2016-Ohio-8027, ¶ 8. This Court has recognized that a probable cause determination is a fact-intensive inquiry that "requires consideration of the totality of the circumstances known to the officer at the time of the arrest." *State v. Rogers*, 9th Dist. Wayne No. 16AP0014, 2017-Ohio-357, ¶ 9. "'To prove impaired driving ability, the [S]tate can rely on physiological factors (e.g., odor of alcohol, glossy or bloodshot eyes, slurred speech, confused appearance) to demonstrate that a person's physical and mental ability to drive was impaired.'" *State v. Slone*, 9th Dist. Medina No. 04CA0103-M, 2005-Ohio-3325, ¶ 9, quoting *State v. Holland*, 11th Dist. Portage No. 98-P-0066, 1999 WL 131665, *5 (Dec. 17, 1999). "The amount of evidence necessary for probable cause to suspect a crime is being committed is less evidence than would be necessary to support a conviction of that crime at trial." *State v. McGinty*, 9th Dist. Medina No. 08CA0039-M, 2009-Ohio-994, ¶ 11.

{¶20} The court concluded, based on the totality of the circumstances, that Officer Beltrami had probable cause to arrest Davis for OVI. The trial court based this conclusion on the

findings that Officer Beltrami stopped Davis after observing his vehicle swerving in the road at approximately 3:30 a.m., Officer Beltrami observed Davis's eyes to be glossy and watery, Davis admitted to Officer Beltrami that he had been drinking alcohol, and Officer Beltrami observed a number of clues when he conducted field sobriety testing.

{¶21} Davis argues that the trial court erred in its probable cause determination because each of the signs Officer Beltrami cited as justification for arresting Davis could have been explained by other circumstances such as the weather, fatigue, and smoking. He asserts that the odor of alcohol was weak and that he had no trouble producing his driver's license and proof of insurance. Finally, Davis contends that field sobriety tests are not reasonably trustworthy.

{¶22} In light of the totality of the circumstances before the trial court, we cannot say that the trial court erred in concluding that Officer Beltrami had probable cause to arrest Davis for OVI. The record reflects that both officers detected the odor of alcohol coming from Davis's person and saw that Davis's eyes were glossy and watery. Davis admitted that he had consumed alcohol earlier in the evening, and Officer Beltrami observed several clues of impairment during the field sobriety tests. Officer Beltrami also observed Davis's vehicle to be weaving prior to the traffic stop. Based on the totality of the circumstances, Officer Beltrami could have concluded that Davis was driving while under the influence. *See State v. Thayer*, 9th Dist. Medina No. 11CA0045-M, 2012-Ohio-3301, ¶ 33 (probable cause requires only the probability that criminal activity exists).

{¶23} Davis's first assignment of error is overruled.

### Assignment of Error II

**[Davis]'s convictions were against the manifest weight of the evidence in violation of Article IV, Section 3 of the Ohio Constitution. [ ]**

{¶24} In his second assignment of error, Davis contends that his convictions were against the manifest weight of the evidence. We disagree.

{¶25} This Court has stated:

In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). The weight of the evidence concerns whether a greater amount of credible evidence offered at trial supports one side of the issue than supports the other. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). An appellate court should only exercise its power to reverse a judgment as against the manifest weight of the evidence in an exceptional case where the evidence heavily weighs against the conviction. *Otten* at 340.

{¶26} "'A conviction is not against the manifest weight of the evidence merely because there is conflicting evidence before the trier of fact.'" *State v. Zaree*, 9th Dist. Lorain No. 17CA011111, 2017-Ohio-9081, ¶ 5, quoting *State v. Haydon*, 9th Dist. Summit No. 19094, 1999 WL 1260298, *7 (Dec. 22, 1999). "An appellate court will not overturn a judgment on this basis alone, and may not merely substitute its judgment for that of the factfinder." *Id.* citing *State v. Serva*, 9th Dist. Summit No. 23323, 2007-Ohio-3060, ¶ 8.

{¶27} In this case, the jury found Davis guilty of OVI in violation of R.C. 4511.19(A)(1)(a), which provides that "[no person shall operate any vehicle * * * if, at the time of the operation * * * [t]he person is under the influence of alcohol, drugs of abuse, or a combination of them." The jury also found Davis guilty of OVI in violation of R.C. 4511.19(A)(2)(a), which provides that no person who has previously been convicted of OVI

within twenty years shall do both of the following: (1) "[o]perate any vehicle * * * while under the influence of alcohol[;]" and (2) refuse to submit to a chemical test or tests subsequent to being arrested for operating the vehicle.

{¶28} In arguing that his conviction was against the manifest weight of the evidence, Davis does not challenge the credibility of any particular witness. Davis argues only that the weight of the evidence does not support the jury's finding that he was under the influence of alcohol. He argues that his traffic violation was de minimis and could have been explained by the snowy weather and road conditions. He also notes that any indicia or clues of impairment noted by the officers in this case could have been caused by something other than impairment.

{¶29} The only testimony presented at trial was from the State's witnesses, Officer Beltrami and Officer Cangelosi. The State also admitted into evidence the videos from both officer's body cameras and their cruiser's dashboard cameras. Officer Beltrami testified he observed Davis's vehicle weaving in an unusual pattern prior to initiating a traffic stop. Although Officer Beltrami acknowledged that "for the most part" the roads were snow covered that evening, he was both able to "see the lane of the road" and to stay within it. Officer Beltrami stated that Davis had no difficulty producing his driver's license or vehicle registration. Both Officer Beltrami and Officer Cangelosi testified that they observed Davis's eyes to be watery and glossy, and that watery, glossy eyes are a good indication of impairment. Officer Beltrami agreed on cross-examination that fatigue can also cause watery or glossy eyes. However, because Davis admitted to having a few drinks earlier in the night in addition to his glossy, watery eyes, Officer Beltrami suspected Davis of being an impaired driver. Consequently, Officer Beltrami requested Davis exit the vehicle to perform field sobriety testing. Officer Beltrami stated that when he opened the car door, he noticed the odor of alcohol. Officer

Cangelosi also testified that he smelled "a very pungent odor" of alcohol when he stood next to Davis's vehicle. Davis then exited the vehicle without staggering or swaying and proceeded to perform the field sobriety tests.

{¶30} Officer Beltrami testified as to how he administered the field sobriety tests and what clues of intoxication he was looking for during those tests. He stated that he observed four clues during the HGN test, which he believed were a pretty good indication that Davis was under the influence. Davis did not, however, have difficulty, sway, or rock during the test. Officer Beltrami could not remember how many clues he observed on the walk and turn test, but testified that he observed Davis use his arms to balance and stepped off the imaginary line. Although Davis had placed his hands in his pockets despite instruction to leave them at his side, Officer Beltrami interpreted Davis's raised elbows as Davis using his arms for balance. Although he indicated that Davis stepped off the imaginary line, Officer Beltrami could not remember how many times he stepped off the line or how far off the line he stepped. Although Officer Beltrami initially indicated that Davis had improperly broken his starting position while Officer Beltrami was giving him the instructions for the test—an act Officer Beltrami interpreted as a clue of impairment—he acknowledged on cross-examination that he had failed to instruct Davis to maintain that position while he gave the instructions. Officer Beltrami stated that he did not know whether Davis broke that position because he was losing his balance, was fidgety, or because it was cold outside. Officer Beltrami also indicated that Davis counted the proper amount of steps and conducted the turn as instructed. During the one leg stand test, Officer Beltrami stated he observed Davis using his arms to balance and at one point miscounted. He acknowledged that he did not see Davis put his foot down, did not see Davis sway, nor did he see Davis hop during the test.

{¶31} Officer Cangelosi testified that he observed Officer Beltrami administer the field sobriety tests. Officer Cangelosi testified that he was not able to see Davis's eyes during the HGN test, but that he observed Davis jerk his head "a few times." Regarding the walk and turn test, Officer Cangelosi stated that Davis did not do "as good as he should have done" on the test. Officer Cangelosi stated that Davis did not begin the test properly, but admitted on cross-examination that Officer Beltrami did not advise Davis to hold his starting position until told to begin. Officer Cangelosi also noted that Davis had his hands in his pockets and did not walk heel to toe. Officer Cangelosi further testified that Davis failed the one leg stand test because he miscounted, his foot was not six inches from the ground, and his toe was pointed up, not straight out. Although Officer Cangelosi interpreted the position of Davis's foot as a clue of intoxication, he admitted on cross-examination that Officer Beltrami never advised Davis how or even if he should point his toe. In describing Davis's arms during the test, he stated that "[Davis] would either go to the left or the right and he would kind of push on his thighs trying to keep his balance." Officer Cangelosi did not observe Davis to stumble or sway while walking.

{¶32} Officer Beltrami testified that he believed Davis was impaired following the field sobriety tests, and offered him a portable breath test, which Davis refused despite Officer Beltrami's statement that if he blew below the legal limit he would let him go to his motel room. Officer Beltrami acknowledged that Davis was polite, calm, and cordial throughout the traffic stop, but also stated he was a bit agitated during the field sobriety tests. Officer Beltrami then placed Davis under arrest for operating a vehicle under the influence, and transported Davis to the Sagamore Hills Police Department. Once at the Sagamore Hills Police Department, he offered Davis the opportunity to take a breath test, which he also refused.

{¶33} Although Davis argues that Officer Beltrami testified he did not observe any slurred speech from Davis, we note that "[w]hile slurred speech is one indicia of intoxication, it is not a prerequisite to a reasonable judgment that a person is under the influence." *Akron v. Smith*, 9th Dist. Summit No. 21519, 2003-Ohio-5773, ¶ 16. "In determining whether a defendant was under the influence of alcohol, [a] jury may properly consider evidence of his appearance and behavior, including his ability to perceive, make judgments, coordinate movements, and safely operate a vehicle." *State v. Baker*, 9th Dist. Summit No. 29167, 2020-Ohio-19, ¶ 13, citing *State v. Moine*, 72 Ohio App.3d 584, 586-587 (9th Dist.1991). In this case, Officer Beltrami ultimately testified that even excluding the results of the walk and turn-test and the one leg stand test, he believed Davis was impaired based on

> [t]he totality of the circumstances between the driving, the odor of alcohol, the admittance of the alcohol, the HGN test and having the four clues which are good indicators that a person is intoxicated, also the watery, red eyes, the glossy eyes, all that together.

Additionally, Officer Cangelosi stated he believed Davis was impaired because of his poor performance on the field sobriety tests. "This Court has repeatedly held that the trier of fact is in the best position to determine the credibility of witnesses and evaluate their testimony accordingly." *State v. Johnson*, 9th Dist. Summit No. 25161, 2010-Ohio-3296, ¶ 15. Moreover, "[a] verdict is not against the manifest weight of the evidence because the finder of fact chooses to believe the State's witnesses rather than the defendant's version of the events." *State v. Martinez*, 9th Dist. Wayne No. 12CA0054, 2013-Ohio-3189, ¶ 16.

{¶34} The trial court instructed the jury that:

> [u]nder the influence means that the defendant consumed some alcohol, whether mild or potent, in such a quantity, whether small or great, that it adversely affected and noticeably impaired the defendant's actions, reactions, or mental processes under the circumstances then existing and deprived the defendant of

that clearness of intellect and control of himself which he otherwise [would] have possessed.

After reviewing the record in this case and in light of the evidence presented at trial, we cannot say that this is the exceptional case where the evidence weighs manifestly against a finding that Davis was under the influence. *See Otten*, 33 Ohio App.3d at 340. A reasonable jury could have concluded that Davis was under the influence of alcohol.

{¶35} Davis's second assignment of error is overruled.

### III.

{¶36} Davis's first and second assignment of error are overruled.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

CALLAHAN, P. J.
HENSAL, J.
CONCUR.


APPEARANCES:

BRIAN A. SMITH, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO GUEST, Assistant Prosecuting Attorney, for Appellee.